> Judgment against the New Haven and Northampton Company advised.

---

## New York and New Haven Railroad Company *vs.* Morris Ketchum.

A corporation is not bound to pay for services rendered before its organization was perfected, in procuring subscriptions to its capital stock.

A director of a corporation is not entitled to compensation for services rendered to the corporation, unless the services are most unquestionably beyond the range of his official duties.

A director of a railroad corporation had rendered special services in procuring subscriptions to the stock of the company and in its organization, which services were rendered on his part in the expectation of compensation. After the company was organized, the stockholders, in view of these services, voted to grant him a free pass over the road for himself and family during his life, which grant was inadequate as a compensation for the services, but was accepted by him as such. Some years after the stockholders rescinded the vote. Held, in an action brought by the company for railroad fares accruing after that time, that if the vote was intended as a contract founded upon the indebtedness of the company for the services rendered as a consideration, and not as a mere gratuity, about which there was room for question, yet that the services rendered created no indebtedness, and could not constitute a consideration for the contract.

Held also that it would have made no difference if the services had been rendered, not only with an expectation of compensation on his part, but upon an express understanding with his associates that he was to be paid by the company after its organization. Aside from the technical difficulty of binding a corporation before its existence, the policy of the law wholly discountenances such arrangements.

ACTION of assumpsit to recover fare for travel on the plaintiffs' road.

The material facts as found by an auditor, to whom the case was referred, are as follows.

From the 25th of August, 1856, to the 5th of February, 1857, Mr. Ketchum, the defendant, and his wife, child and servants, frequently passed over the plaintiffs' road, between Westport and New York, without paying fare, claiming a right so to do by virtue of a certain resolution of the railroad company hereinafter set forth. For the whole amount of that fare the plaintiffs were entitled to recover in this suit, unless the defendant was exonerated by that resolution from all obligation to pay it.

The railroad company was incorporated in May, 1844, by an act of the General Assembly, which act, (4 Private Acts, 1020,) and the acts in addition thereto, were in evidence in the case. In June, 1844, an unsuccessful effort was made to procure subscriptions to the capital stock. On the 13th of August, 1844, the grantees of the charter adopted certain rules, providing, among other things, that each person who should subscribe for stock should have power, at pleasure, within a certain time, and upon certain conditions, to surren-

der his stock to the company and thereby relieve himself from liability upon his subscription.   It was further provided that each subscriber should advance one dollar per share on one quarter of the number of shares for which he should sub- scribe.   The object of this arrangement was, to obtain the necessary subscriptions, organize the company, and raise funds for preliminary surveys.   Under this arrangement 20,400 shares of stock were subscribed for, under date of August 14th, 1844, by a few persons, funds were raised for the surveys, and an executive committee was appointed by the subscribers.   The surveys were completed in February, 1845.   From that time until the 19th of May, 1846, no material progress was made in organizing the company or procuring the road to be constructed.   On the 19th of May, 1846, the first meeting of the stockholders under the subscrip- tion last mentioned was called, and directors were chosen. At this time the stock subscribed for was liable to be surren- dered to the company, and the corporation had no reliable resources for the construction of their road.  Ketchum was one of the directors appointed at this time, and continued a director until November 8th, 1854.

On the 30th of September, 1846, the board of directors instructed the president to take measures to procure sub- scriptions for such part of the stock as had been or should be surrendered to the company by the original stockholders, in order that the company might, in season, avail themselves of a proposition made by Alfred Bishop to enter into a con- tract for building the road, which proposition was to become binding on Bishop only on condition that the necessary amount of stock should be taken on or before December 31st, 1846.   Thereupon the president requested Mr. Ketchum to aid in obtaining subscriptions to the stock by personal application and by using his personal influence and exertions among business men.   Mr. Ketchum was a banker, and was accustomed particularly to money and railroad operations, and had an extensive personal acquaintance and much influ- ence with business and monied men.   He undertook to ob- tain subscriptions as requested, received a blank subscription

list, and with this list made personal applications at different times between September 30th and December 31st, 1846, to various persons to induce them to subscribe, and by these efforts he procured subscriptions to the amount of 9,480 shares within the time limited in the arrangement with Bishop. The balance of the required amount of stock was taken through the agency of the president and of Bishop. The subscriptions were obtained with difficulty, and were necessary to make the enterprise successful. When Mr. Ketchum was so requested to act, nothing was said about any specific compensation for the services to be performed, and no reference was made to the matter of compensation, but he did not understand or suppose that he was giving his services as a gratuity in case he should be successful in procuring the stock to be taken, but expected some benefit and compensation other than such as he would derive from the road in common with others. The services of Ketchum in procuring these subscriptions were of much greater value to the company, according to the usual charges for services of a similar character, than the amount which the company claimed to recover in this suit. The directors, as a consideration for these services, after consultation with Mr. Ketchum in relation to them, on the 8th day of April, 1847, passed the following resolutions:—

"Resolved, unanimously, that this board do highly appreciate the zeal, activity and perseverance evinced by Morris Ketchum, Esq., a member of this board, in his efforts to secure subscriptions to the capital stock of this company, and to commend the project to the favorable consideration of the public, and that to his exertions we are, in a great degree, indebted for the filling up of the stock and securing the immediate construction of the road at so early a period.

"Resolved, unanimously, that as a permanent evidence of our estimate of the services of Mr. Ketchum, and as a consideration in some degree therefor, this board doth hereby assign and grant to him the right to a free passage in the cars of this company over its road, for himself and family, during his natural life.

" Resolved, that the secretary be directed to transmit to Morris Ketchum, Esq., a copy of the foregoing resolutions."

A copy of these resolutions was soon afterward presented to Mr. Ketchum. The free passage was not granted to him nor received by him as a gratuity, but as a compensation, to some extent, for his services. Before the passage of the resolutions, conversation was had in relation to the subject between Mr. Ketchum and the president and some of the directors, and it was expressly understood that the consideration expressed in the resolutions was the actual consideration upon which the grant was made, and that the services of Mr. Ketchum were a full and adequate consideration for the right and privilege granted. After the passage of the resolutions, and in consequence thereof, Mr. Ketchum made no other or further claim against the company for his above-mentioned services. From the time when the road went into operation in January, 1849, Mr. Ketchum and his wife, children and servants, were accustomed to travel upon it between Westport and New York, whenever they chose so to do, without paying fare, claiming a right so to do by virtue of the resolutions above set forth. This was done with the knowledge and consent of the company until the time hereinafter mentioned, and without any demand of fare by the company, and without any claim by the company that any of those persons were liable to pay any passage-money. The facts above stated were known to the stockholders, and were discussed at one of their meetings in which the president explained to them that the privilege so granted to Mr. Ketchum and his family had been given by way of compensation for his valuable services, yet no action was then taken in reference to revoking the privilege. No further action was taken upon the subject until the 10th day of May, 1855, when a meeting of the stockholders passed the following vote:—

" Whereas, the board of directors of the New York and New Haven Railroad Company, at some time prior to this date, granted to Morris Ketchum and family, and to others, the right to pass and repass upon the road of said company, free of charge, for all time, or without limit—now therefore,

Resolved, that the president of this company be instructed to annul all such grants, and give notice to all persons claiming under such grants."

The fact of the passage of this resolution was not communicated to Mr. Ketchum, and he had no knowledge of it, and no action was taken by the president in relation to it. Mr. Ketchum continued to enjoy the benefit of the free passage as before, until after the 18th day of August, 1856, on which day the board of directors passed the following vote:—

"Resolved, that the resolution of this board, passed the 8th day of April, 1847, granting to Morris Ketchum, Esq. the right to a free passage in the cars of this company over its road for himself and his family during his natural life, be, and the same is hereby rescinded and annulled, and this company will hereafter exact from the said Ketchum and from the members of his family the usual and ordinary fares for passage over said road."

This resolution was duly communicated to Mr. Ketchum, with notice that it would be enforced against him from and after August 25th, 1856. From and after that day until the date of the commencement of this suit, February 5th, 1857, fare was demanded by the company from Mr. Ketchum for the passages of himself and family and servants whenever they traveled upon the road, but payment thereof was refused under the claim of a right to pass without payment.

Upon these facts the case was reserved for the advice of this court.

*Dutton*, for the plaintiffs.

1. The grant of the free pass is void. 1st. The charter gives no power to the directors or the corporation to expend money for procuring subscriptions to the stock. *Lessee of Knowler* v. *Beaty*, 1 McLean, 41. *Beaty* v. *Lessee of Knowler*, 4 Pet., 152. *Kean* v. *Johnson*, 1 Stock. Cha., 401. *Smith* v. *Morse*, 2 Cal., 524. *Bostock* v. *North Staffordshire Railway*, 32 E. L. & E., 101. *Abbott* v. *Baltimore Steam Packet Co.*, 1 Maryland Ch. Dec., 542. *N. Y. Firemen's Ins. Co.* v. *Ely*, 5 Conn., 560. *Hall* v. *Verm. & Mass. R. R. Co.*, 28

Verm., 401. *Littleton Mfg. Co.* v. *Parker*, 14 N. Hamp., 543. 2d. The condition of the subscription for the stock did not give the directors authority to incur any expense which the corporation could afterwards assume. *Littleton Mfg. Co.* v. *Parker*, supra. 3d. The services were rendered while Ketchum was a director. They were such as pertained to his honorary office, and no action will lie for them. Redfield on Railways, § 176. *Dunstan* v. *Imp. Gas L. Co.*, 3 B. & Ad., 125. *Clark* v. *Imp. Gas L. Co.*, 4 id., 315. *Lessee of Knowler* v. *Beaty*, supra. *Beaty* v. *Lessee of Knowler*, supra. 4th. Neither the directors nor the stockholders, at any of their meetings, could make a gift of the money or privileges of the company. *Hodges* v. *Buffalo*, 2 Denio, 110. *New London* v. *Brainard*, 22 Conn., 552. 5th. It would operate as a fraud on those who were persuaded to become stockholders, if either class were required to pay for obtaining the new stockholders. The old stockholders took the stock on the assumption that the capital was already taken; the new stockholders, if the claim of the defendant is correct, can be compelled to pay for being induced to take stock. 6th. The action of the corporation at its meeting had no effect to ratify the resolutions of the board of directors in question. *McCullough* v. *Moss*, 5 Denio, 567. *Farmers Loan & Trust Co.* v. *Carroll*, 5 Barb., 613.

2. If the grant of a free ticket was without consideration, so as to be a mere gratuity, then, though it might be good as a mere license until revoked, yet the plaintiffs clearly had the right to revoke it, and upon its revocation all right on the part of Mr. Ketchum to a free passage ceased.

3. If the privilege is sustained it will not reach the fare of Ketchum's servants.

*Hungerford*, for the defendant.

1. Before Mr. Ketchum was employed, the corporation had been organized. The directors had power to make the arrangement which was in fact made with him, and the arrangement was a valid one. Charter, secs. 1, 3, 7, 11. (4 Priv. Acts, 1020.) *Barry* v. *Merchant's Exchange Co.*, 1

New York and New Haven Railroad Company *v.* Ketchum.

Sandf. Ch. R., 280. Redfield on Railways, 100, n. 3. The directors had power to grant the license, and, being for a valuable consideration, it is irrevocable. *Fister* v. *La Rue,* 15 Barb., 323. *Pitkin* v. *Long Island R. R. Co.,* 2 Barb. Ch., 223. *Great Western Railway Co.,* v. *Manchester Railway Co.,* 10 E. L. & Eq., 11. *Wadhams* v. *Litchfield and Canaan Turnpike Co.,* 10 Conn., 416. *Central Bridge Corporation* v. *Bailey,* 8 Cush., 319. *Same* v. *Sleeper,* id., 324. *Same* v. *Butler,* 2 Gray, 132. *Commonwealth* v. *Alleghany Bridge Co.,* 20 Penn., 185. *Del. & Hud. Canal Co.,* v. *Penn. Coal Co.,* 21 id., 131. *Brown* v. *Winooski Turnpike Co.,* 23 Verm., 104.

2. Although Mr. Ketchum was a director, he is not on that account precluded from recovering for these services. *Henry* v. *Rutland and Burlington R. R. Co.,* 27 Verm., 435. *Hall* v. *Verm. and Mass. R. R. Co.,* 28 id., 401. *Hodges* v. *Verm. and Burlington R. R. Co.,* 29 id., 220. Redfield on Railways, 406.

3. The grant to Ketchum and his family extends to all members of his household, including servants. 2 Sto. Eq., Jur. § 1065, b. *Blackwell* v. *Bull,* 1 Keen's Cha. R., 176–181. Bouvier's Law Dict., tit. Family. Webster's Dict., same. The vote is to be taken most strongly against the company. Usage, in this case, determines its true construction. 1 Greenl. Ev., secs. 293, 301. *Wadhams* v. *Litchfield & Canaan Turnpike Co.,* 10 Conn., 416.

ELLSWORTH, J. It has been assumed throughout the argument, and we think correctly, that the grant made to Mr. Ketchum by the vote of the 8th of April, giving him and his family a free ticket over the plaintiffs' road, can not be sustained and made available to the defendant, unless it was made on a valuable and adequate consideration. As a gratuity it is not claimed that it can be upheld. We shall therefore turn our attention to the question of consideration, or indebtedness of the company to Mr. Ketchum, passing by other questions which have been discussed, however interesting or important they may seem to be.

The plaintiffs insist that the grant was a pure gift or gratuity, founded on no consideration beyond personal respect and esteem towards Mr. Ketchum on the part of the directors, for his devotion to the company as a fellow director, while on the other hand the defendant insists that the company were his debtors, for services rendered in their business, to an amount much larger than the value of the thing granted, and that he received the consideration not only as an honorable testimony of respect, but in payment and satisfaction of his claim. This is the issue between the parties.

The plaintiffs say in the first place, in support of their view, that the defendant has at no time rendered service to them, but that whatever was done by him was done in behalf of three or four individuals, who, together with himself, undertook to accomplish certain ends of their own, before the plaintiffs were a corporation, and for which the company was not liable, and in fairness to those who afterwards became stockholders ought never to be held liable, either with or without a vote of the directors. They say secondly, that if it be otherwise, and the services were rendered to the plaintiffs, they were not performed under any agreement or understanding with the plaintiffs that the defendant was to be paid for them; and that he was a mere director, chosen because of his position, experience and financial ability, and especially his great pecuniary interest in carrying the road through, and in all that he did was merely acting as such director. They insist that he did nothing beyond what his official relation to the company required him to do, and no more than was expected of a director. They say thirdly, that directors have no right by grants, free tickets, commissions or otherwise, to remunerate themselves for official services. These objections, involving as they do important questions of a somewhat general nature, cover substantially the whole ground of controversy, and, if sustained by the facts in the case, make a decisive answer to the defendant's claim. Let us then look at the facts.

It appears that from the 13th day of August, 1844, when certain persons attempted to form a company under the

charter granted by the legislature, to December, 1846, when the stock was really taken up by bona fide stockholders, and the company perfected, the corporation was in an anomalous and inchoate state. (Nothing had been done that was binding upon the so called stockholders, beyond the payment of one dollar per share. The proceedings thus far seem to us to be open to very serious objection in their relation to the existence of the corporation, if the legislature had seen fit to interfere in that stage of the affair; but it did not do so, and since we have no occasion to inquire into the validity of these incipient proceedings, we shall look at them only in their relation to the other objections already stated.

The services for which it is claimed that the plaintiffs were liable to pay the defendant, were rendered between the first of October and the last of December, 1846, at a time before the stock was taken up in conformity to the charter, and before the company had a proper existence. Hence it is not easy to see how they could be rendered for or at the request of the company, (or rather perhaps the first *bona fide* stockholders, for they must be looked at as the company,) and if they were not so rendered, then how the company could be liable for them, upon any known principle of law. We are aware that it is no uncommon practice for corporations to assume and pay these preliminary and antecedent charges, after the company has become organized, but we do not see how the company, if it should object, could be compelled to pay them, and in some cases it would be most inequitable to require it. Can a few persons combine for their own interest to get up a railroad,—agree with one of their number to give him a large commission or bonus for every stockholder he can allure into the company,—and privately make this commission or bonus a charge on the corporation when formed? This would be a breach of faith towards honest and unsuspecting stockholders who pay the charter price for their stock and expect to take it clear of all incumbrance. The effect would be the same as if commissioners should enter into a private bargain with subscribers, to let them subscribe on terms which the charter does not allow.

The getters-up of projects to be carried by such means, may well be supposed, as is generally the fact, to be influenced by a view to their own special benefit, for certainly they do not act in behalf of the corporation itself. We do not say that the present is such a case, but such is the natural consequence of the doctrine claimed by the defendant's counsel, and we can not give it our approval or countenance. It is soon enough for corporate bodies to enter into contracts incumbering their property, when they are duly organized according to their charters and have their chosen and impartial directors to conduct their business. If a vote was necessary in this case to make these charges a debt against the company, the grant for that very reason can not stand, for the directors had no power to assume or to create such a debt for such a service.

But the next objection is still more decisive. As we have said, the services of the defendant were rendered between the first of April and last of December, while he was a director, and exerting himself together with others to get the company into being. In what exactly his services consisted beyond his advice and personal efforts to induce gentlemen to take stock in the company, does not appear. We see nothing of time spent, money expended or travel or other labor, except what may be implied from the fact that Mr. Ketchum "was a banker and particularly accustomed to financial and railroad operations, and had an extensive and personal acquaintance and much influence with business and monied men," and his having received from one of his associates, then acting as president of the association, a blank subscription list, accompanied with a request that he would get subscribers, which he promised to do, and accordingly made application to persons and firms, and got subscribers to the amount of 9,480 shares, which, as the report says, were obtained "with difficulty and only on personal application." Nothing however was said, in the interview with his associates, so far as appears, as to this service being considered or treated as extra labor, or as entitling him to a commission or reward; not a word appears to have been said about compensation, nor does it appear that it was so much as alluded to; still it is found

New York and New Haven Railroad Company *v.* Ketchum.

that Mr. Ketchum himself did not suppose the services were to be gratuitous. We suppose it may be so, but even he himself does not state in what manner he expected to be compensated. Doubtless a director may perform extra labor, and for it be justly entitled to a compensation for his time and expenses, and this may be made out even without an express promise, for a promise may be implied from the peculiar and extraordinary services rendered, but then the services must appear to be of an extraordinary character, and this beyond all question or doubt, for as director he agrees to give his services, and is entitled to make no charges whatever, however severe and protracted may be his labors. A different rule would lead to great abuses and corruption. We can not but think it important in every case, that where a person, holding the position of a director, expects or may be fairly entitled to expect a compensation for his services, the services should appear to have been agreed for, or their nature and extent should appear to be such as clearly to imply that both parties understood they were to be paid for, and not rendered gratuitously within the scope of a director's duty.

Mr. Ketchum, so long as he remained a director, was bound in good faith to make a proper use of his influence to induce persons to take stock in the company, if thereby he could fairly promote the interests of the company. He was chosen a director because of his ability, at the outset of this enterprise. Why did his associates select a man of his character and experience, but that he might bring these capabilities into the discharge of his duties to the company? If Mr. Ketchum thought his aid and co-operation were too cheaply purchased by the incidental advantages which he expected to receive by carrying this road through, he should have said so, and then he might or might not have been chosen a director. Undoubtedly the other directors did what they could, and whether it was more or less than Mr. Ketchum did does not appear. They did what they could, and we see no evidence that any one of them agreed for or was to receive compensation from the company when organized.

All expected to be benefited in some way, and we can not doubt that their expectations were realized. One became president, another was contractor and built the road, another the financier, and another perhaps had real estate on the proposed line of the road, the value of which would be enhanced. They all had their several objects and ends, and probably secured them, and so far as this was properly done the company can not complain, but then such services, unaccompanied with a special contract, fall quite short of creating an indebtedness against the corporation.

The third objection, viz., that directors have no right to charge for performing official duty, is a principle universally admitted to be sound law. We find it so laid down in the elementary books, and in several decided cases, and the reasons assigned most forcibly commend themselves to our approbation. In *Collins* v. *Godfrey*, 1 ·Barn. & Ald., 950, a director of a bank was prevented from receiving a reward offered by the bank for the recovery of stolen property, because he performed nothing but his duty in endeavoring to recover it. In *Dunstan* v. *Imperial Gas Light Co.*, 3 Barn. & Ad., 125, a resolution formally adopted, allowing the directors certain compensation for attendance on courts, &c., was held insufficient to give a director a right to recover for such services. The same doctrine is held in the case of *Loan Association* v. *Stonemetz*, 29·Penn., 534. There a vote was passed by the directors to pay the chairman of a committee on short loans $200 for his services already rendered, but the court held that it created no debt, it being in favor of a director for services rendered by him in his official capacity. The court say, "Although the director performed the work faithfully, his labors fell within the limit of his duty as a director, and the fact that he performed them with an exuberance of good faith imposed upon the corporation no moral duty to pay for them. The legal obligation was as defective as the moral. When the resolution was passed the consideration had been executed, for the services compensated by this verdict had been previously rendered, and there is no proof of a precedent or contemporaneous request. It is

New York and New Haven Railroad Company *v.* Ketchum.

quite true that they were beneficial to the defendant, and a request might, in the liberal spirit of modern decisions, be implied, but in the instance of gratuitous services performed by a party in the line of his legal duty, there is no case which authorizes such an inference. Our decision must be placed on yet higher ground. We regard it as contrary to all sound policy to allow the director of a corporation, elected to serve without compensation, to recover payment for services performed by him in that capacity, or as incidental to his office. It would be a sad spectacle to see the managers of any corporation, ecclesiastical or lay, civil or eleemosynary, assembling together and parcelling out among themselves the obligations or other property of the corporation in payment of their past services."

Were it of importance to the result to which we have come to examine the language and spirit of the vote of the 8th of April, 1847, to see if it really furnishes evidence of an acknowledged indebtedness on the part of the directors, we would attempt it; but it is not. We think, however, that the vote implies little more than that the directors, feeling that Mr. Ketchum had rendered faithful and successful services in organizing the company, and was entitled to their respect and gratitude, wished to give him some suitable evidence of their sense of obligation and of their esteem; and accordingly the vote speaks of his "zeal, activity and perseverance as a director," and therefore "as permanent evidence of their esteem" and as a consideration likewise, "they grant," &c. Neither of the parties acted, we think, as if the relation between them was one of debtor and creditor, and as if as such they were making a final settlement and paying the debt.

For these reasons we advise judgment for the plaintiffs.

In this opinion the other judges concurred.

Judgment for plaintiffs advised.