FREDERICK W. SAWYER vs. THE PAWNERS' BANK.

There is no implied contract on the part of a banking corporation, whose objects are partly charitable, to pay for official services rendered to it by its president; nor is such contract established by proof that the president informally mentioned to some of its directors that he should expect compensation, and that they made no reply.

CONTRACT to recover for the plaintiff's services as president of the Pawners' Bank from January 1st to November 25th 1861. A trial by jury was waived in the superior court, and the case was heard by *Rockwell*, J., who ruled that the plaintiff was not entitled to recover, upon facts which are stated in the opinion, and directed judgment for the defendants. The plaintiff alleged exceptions.

*A. S. Wheeler*, for the plaintiff. The agents of a corporation, like the agents of a natural person, are entitled to be paid what their services are reasonably worth. Angell & Ames on Corp. § 317. *Commonwealth Ins. Co.* v. *Crane*, 6 Met. 64, and cases cited. *Melledge* v. *Boston Iron Co.* 5 Cush. 175, and cases cited. If there is any usage that presidents of banks are not to receive compensation, it would have been open to the defendants to allege and prove the same; but this was not done. The Gen. Sts. *c.* 57, § 49, do not apply to banks like this, because in the charter of this corporation special provision is made for the election of officers. Besides; the General Statutes do not intend that a president of any bank, who has rendered valuable service, shall receive no compensation. The Gen. Sts. *c.* 68, § 1, provide generally that corporations, in the absence of special provisions, may elect necessary officers and fix their compensation. If the construction contended for by the defendants is correct, no officer

elected by a corporation can recover for his services, if the corporation neglect to fix the amount. The nature of the services rendered by the president is different from that of services rendered by the directors, and he should not be subject to the same rule as to compensation.

*G. O. Shattuck & J. C. Ropes*, for the defendants, cited Angell & Ames on Corp. § 317; Redfield on Railways, § 176; *Hall* v. *Vermont & Massachusetts Railroad*, 28 Verm. 401; *Dunston* v. *Imperial Gas Light Co.* 3 B. & Ad. 125; *New York & New Haven Railroad* v. *Ketchum*, 27 Conn. 170; *Loan Association* v. *Stonemetz*, 29 Penn. State R. 534; *Taylor* v. *Brewer*, 1 M. & S. 290: *Bill* v. *Darenth Valley Railway*, 37 Eng. Law & Eq. R. 539.

MERRICK, J. This case was submitted by agreement of the parties to the determination of the presiding judge before whom it came on to be tried, without the intervention of a jury. He ruled that upon the facts stated in the bill of exceptions, and which he found to be fully proved, the plaintiff was not entitled to recover either the sum sued for, or any other amount whatever, because it appeared that the directors had never voted to fix, or to make to him, any compensation for his services as president of the bank. Interpreting the language in which the ruling of the court was expressed in its application to the facts which had been proved, as we think it should be, it was in substance and effect a mere determination that upon those facts the plaintiff had established no legal right to recover compensation for services rendered in behalf of the defendants in his official capacity. And thus understood the ruling appears to have been perfectly correct.

It is conceded by the plaintiff that there was no express contract between him and the defendants upon the subject; that they never expressly promised to pay him, and that neither the stockholders nor directors ever voted that he should receive compensation for services rendered or to be rendered by him as president of the corporation. But he contends that he has a right to recover a reasonable compensation for those services under a promise implied by law from the fact that they were

valuable and deserving of reward, and that he had stated to some of the directors during the time while he was rendering them that he should expect to be paid therefor.

But the mere rendition of meritorious or valuable services is insufficient to justify a legal implication that the party in whose behalf they were performed promised to pay for them. Thus it frequently happens that the officers of public and private corporations assume weighty responsibilities, perform much labor and render very valuable services gratuitously and without the least expectation on the one side or the other that there is to be any pecuniary recompense made in return. It is so, for instance, with the selectmen, the overseers of the poor, the aldermen and members of the common council, in municipal corporations, and often with the directors and perhaps also with the presidents of railroad and banking companies. To render the person or party for whom such services are performed liable therefor as a debtor under an implied promise that they should be duly recompensed in money, it is essential not only to show that they were valuable, but that they were rendered under such circumstances as make it fairly presumable that the party allowing them to be rendered and receiving the benefit to be derived from them expected, or at least ought to have expected, that they were to be paid for. Such a presumption arises in reference to any species of work, labor or employment which is usually and commonly the subject of hire and reward, and paid for whether any specific bargain is or is not made concerning it.

But the plaintiff fails to show the facts necessary to enable him to avail himself of that principle in support of his claim. He has not referred to, nor have the court any knowledge of, a single instance in this commonwealth in which the president of a bank has recovered, or even attempted in a suit at law to recover compensation for his official services, where there was neither a special contract nor some vote of the corporation or of its directors providing for its payment. Such officers are undoubtedly often paid for such services, but always, we believe, under the sanction of some express agreement or of some vote of the directors allowing or assenting to it. In the absence of

any such provision, the presumption would therefore be that the service was gratuitously performed, either in consideration of the advantages incidentally resulting from the position, or from motives of generosity and public spirit. And this is according to the general rule which prevails in relation to the directors in similar corporations. Redfield on Railways, § 176. *New York & New Haven Railroad Co.* v. *Ketchum*, 27 Conn. 170. *Loan Association* v. *Stonemetz*, 29 Penn. State R. 534.

There is a further presumption that the services of the plaintiff as president were intended by him and expected by the corporation to be gratuitous, arising from the facts and circumstances under which he entered upon and undertook to perform the duties of his office for the year, for a portion of which his charges are now made. He had served in the same office the preceding year without receiving or soliciting compensation therefor. He gave no notice either before or at the time of his reëlection that he could not serve in the office gratuitously, or that he should accept it, or enter upon the discharge of its duties, in the expectation of receiving some reasonable compensation for his services. The defendants had therefore a right to suppose that he would serve them upon the same terms as before, and that they were assuming no legal obligation to make him a pecuniary recompense. It is true that he did at some time, though it does not appear when, state to some of the directors that he should make no charge for his services for the first year, nor up to January 1, 1861, and that he said at a stated meeting of the board in the month of January of that year, in the presence of two directors, by whom he was heard, that he should expect to receive a reasonable compensation for his services after that time. To this they made no reply. It was not a formal notice or communication upon which those to whom it was addressed, or the board of directors, were called upon or expected to act; and their silence under such circumstances could give the plaintiff no right to which he was not already entitled.

Under their act of incorporation, *St.* 1859, *c.* 173, the defendants are invested with all the powers and are to be governed by

the rules and provisions established by law relative to banks in this commonwealth, as far as they are applicable to the institution. The rule in relation to the election of the president and the compensation which may be made to him for services is to be included among those applicable to the defendant corporation as being well adapted and very suitable to its condition. By Gen. Sts. *c.* 57, § 49, the directors are required to choose one of their number to be president, and they " may make him such compensation as they think reasonable." The whole subject concerning his compensation is left to them, to be voted upon at and according to. their discretion. Hence the implication is very strong, even if it ought not to be considered conclusive, that if they take no action on the subject and make no provision for his salary or compensation for his services, and there is no special contract in reference thereto, the presumption will and ought to be that the incumbent is willing and consents to take upon himself the burdens of the office without reward, and to execute its duties without compensation.

This presumption that the president and directors do in such case expect and intend and are expected and believed to render their services gratuitously, and without any thought of demanding or receiving compensation therefor, is greatly strengthened by a consideration of the objects and purposes for which the Pawners' Bank was established. It is called in its charter an " institution ; " and peculiar privileges are given to it that it may be able to accomplish the charitable purposes which obviously constituted the chief inducement to its incorporation. *St.* 1859, *c.* 173. By § 10 it is provided that the net balance of the " profit and loss fund " shall be made up annually to the first day of January, and " shall be doled in fuel to the needy, under the direction of the board, during the months of January, February and March." In aid of an object so charitable and humane, it is certainly much rather to be presumed that the officers of an institution established specially to promote it would, in the absence of any contract or vote assuring them compensation, very freely and cheerfully contribute their personal services gratuitously, than that they should seek to hold

their position as a place of profit, reward and gain. And we think it may certainly be said that in such a case, where no bargain has been made, and the directors in the exercise of a lawful discretion have seen fit to decline voting any compensation to the president for his official services, the law does not and cannot imply a promise to pay for them merely for the consideration that they were meritorious and valuable, and that the incumbent expressed as in this case an informal desire or expectation of payment.

Upon these considerations we are all of opinion that the exceptions of the plaintiff must be overruled ; and that the judgment of the superior court for the defendants must be affirmed.