ST. JOHNS MANUFACTURING CO. v. MUNGER.

CORPORATIONS—ACTION ON STOCK SUBSCRIPTION—FALSE REPRE-
SENTATIONS OF PROMOTERS.

> One who has united with others in an agreement to form a
> corporation, and pursuant thereto has joined in the execu-
> tion of articles of association, cannot defend an action upon
> his stock subscription on the ground that it was procured by
> the false representations of some of his associates in the
> enterprise, made while they were acting as a soliciting com-
> mittee appointed at a preliminary public meeting. Such a
> case is not within the rule that a principal, by accepting
> the benefits of an unauthorized contract made by an agent,
> assumes the incident obligations.

Error to Clinton; Dodds, J., presiding. Submitted
June 6, 1895. Decided July 2, 1895.

*Assumpsit* by the St. Johns Manufacturing Company
against Orrin W. Munger upon a subscription to the cap-
ital stock of the plaintiff. From a judgment for plain-
tiff, defendant brings error. Affirmed.

*Fedewa & Walbridge,* for appellant.

*Spaulding, Norton & Weimer,* for appellee.

HOOKER, J. The plaintiff recovered a judgment against
the defendant upon an assessment on the capital stock of
the corporation, to which the defendant was a subscriber.
Upon the trial the plaintiff's counsel objected to evidence
in support of the notice accompanying the plea, which
objection was sustained, and the case turns upon the
sufficiency of the facts stated in the notice as a defense.
These facts are substantially as follows: Prior to Jan-
uary 1, 1892, R. M. Steel, of St. Johns, and others, had
been carrying on a manufacturing business in that city,
under the name of the St. Johns Manufacturing Com-
pany. Some time before the date mentioned, a proposi-

tion had been made by Steel to a number of the citizens of St. Johns to incorporate said business with a capital of $300,000, of which $200,000 was to be preferred stock, and $100,000 common stock; and some time in 1891 the defendant subscribed for 50 shares of common stock by signing an agreement of which the following is a copy, viz.:

"*Whereas*, The St. Johns Manufacturing Company is to be incorporated as a stock company, with a capital stock of $300,000, we do each of us severally subscribe and agree to pay for the number of shares of said stock set opposite our respective names, the par value of said shares to be $10 each. The stock hereby subscribed to be paid in 20 equal monthly installments, commencing October 20, 1891, with 7 per cent. interest on unpaid portions after January 1, 1892, or all or any part in excess thereof may be paid at any time at the option of the subscriber."

Prior to said subscription, the defendant had no knowledge of the extent or profits of said business carried on by Steel and others. Prior to the time that the defendant subscribed as aforesaid, a meeting was held at St. Johns, which was attended by Steel and a great number of citizens of the place, for the purpose of considering the advisability of forming a corporation to carry on said business, and a committee was appointed by said meeting for the purpose of soliciting subscriptions for stock in the proposed corporation. Said committee consisted of citizens of St. Johns, who proposed to and did subscribe for part of the stock of said company. Said committee, "in order to induce" defendant to subscribe for stock, represented to him that the said business had for a series of years been a very prosperous and money-making one, and that during the period it had manufactured tables it had never paid less than 10 per cent. a year on capital invested of $300,000, and had paid as high as 17 or 18 per cent. a year on said amount of capital. Said committee further represented to the defendant that the business was to be capitalized in the sum of $300,000, of which $200,000 was

to be preferred stock, and $100,000 common stock; that the former was to be paid an annual dividend of 6 per cent. from the earnings of the company, and the common stock was to be paid the balance of the profits, which would be at least 10 to 20 per cent. per year. The machinery was to be invoiced and appraised at its cash value by disinterested persons, and turned in as part of the capital, and the common stock was to have "such representation on the board of directors so that they could protect their interests." It was further stated that the practice of the former company of issuing to its workmen and others coupons payable at the St. Johns Mercantile Company (an institution in which said Steel had a large interest) should be discontinued, and that such coupons should thereafter be made payable at all the stores in St. Johns. The notice alleges, further, that the defendant "relied upon" each of such representations, and was thereby induced to subscribe for such stock. The notice states that preferred stock to the amount of $199,000 is owned by Steel; that the new company has continued to issue coupons payable as before, and not at the stores of St. Johns generally; that Steel's stock was paid for by him by turning over to the new company the plant, machinery, stock, and material connected with the business before the incorporation of plaintiff; that such property was not invoiced and appraised by disinterested persons, but was turned in at more than its cash value; and that each representation made by said committee to the defendant, and by which he was induced to subscribe for said stock, was untrue, and that he had no knowledge of its falsity, either at the time he subscribed or at the time of his payment of $100 upon said subscription. The notice asserts, further, that the by-laws adopted by said corporation are antagonistic to the rights of the holders of the common stock, and unjustly prefer the holders of the preferred stock, to an extent that renders the common stock worthless, and that such by-laws were adopted by the votes of the holders of the preferred stock, to the

detriment of the holders of the common stock, and against the protest of some of the latter; that the majority of the directors have been selected by the holders of the preferred stock, and the board has ignored the interests of the holders of the common stock. It is further alleged that the plant has been used for many other purposes than those represented to be contemplated, and for some unauthorized purposes. The foregoing comprises the essential allegations of the defendant's notice, and, if it states a sufficient defense, the judgment must be reversed; but, if it does not, it was proper to sustain the objection made by the plaintiff's counsel, and the judgment should be affirmed. *Spicer* v. *Bonker*, 45 Mich. 630.

Counsel for the defendant say that the plaintiff company is bound by the representations of the citizens' committee which procured the defendant's subscription by misstatements, the benefit of which it cannot receive and retain without assuming responsibility for the representations. This is an attempted application of the rule that, by accepting the benefits of a contract made by an agent, the principal is bound by the undertakings and promises of the agent. A number of cases are cited to sustain this contention, which, manifestly, must rest upon the proposition that the citizens' committee was an agent of the company which its efforts created. Among the cases cited are many which support the general rule above stated, viz., that a principal must assume the obligations, if he wishes the benefits, of an unauthorized contract made by an agent. As stated by Paley:

"Contracts made for the benefit of another, but without his privity or direction, may be rejected or affirmed at his election. But, by making the election to affirm it, he adopts the agency altogether, as well that which is detrimental as that which is for his benefit. But, in seeking to enforce contracts entered into by agents, the principal is subject to have them impeached by any conduct of his agent which would have had that effect if proceeding from himself. Every species of fraud, misrepresentation, or concealment, therefore, in the agent, affects

the principal's right to recover." Paley, Ag. 324; *Hitchcock* v. *Griffin & Skelley Co.*, 99 Mich. 451.

This doctrine was applied in the case of *Crump* v. *Mining Co.*, 7 Grat. 352; but in that case there was no question of the existence of the relation of principal and agent, and contract relations between the parties. Crump was a purchaser of stock from the pre-existing corporation, through its representative, authorized by the corporation to sell the stock.

Most of the cases cited by counsel relate to contracts made with, or services performed by, promoters, previous to the organization of the corporation, upon an understanding with the prospective stockholders or some of them. It is uniformly held that such arrangements may be ratified by the corporation after organization. *Wilson* v. *Railroad Co.*, 114 N. Y. 487; *Bommer* v. *Manufacturing Co.*, 81 N. Y. 468; *Rockford, etc., R. Co.* v. *Sage*, 65 Ill. 328; *Low* v. *Railroad Co.*, 45 N. H. 370; *Stanton* v. *Railway Co.*, 59 Conn. 272; *Reichwald* v. *Hotel Co.*, 106 Ill. 439; *Whitney* v. *Wyman*, 101 U. S. 392; *Battelle* v. *Pavement Co.*, 37 Minn. 89; *New York, etc., R. Co.* v. *Ketchum*, 27 Conn. 170. But in the case of *Rockford, etc., R. Co.* v. *Sage*, *supra*, while admitting the doctrine of ratification, the court say that, "*in the absence of an express promise, no promise to pay will be implied from the fact that the company, when organized, accepts and receives the benefit of the same;*" and "*a right of recovery against a corporation for anything done before it has a proper existence does not appear to rest upon any satisfactory legal principle.* It is soon enough for such corporate bodies to enter into contracts incumbering their property when they are duly organized according to their charters, and have their chosen and impartial directors to conduct their business." In *Battelle* v. *Pavement Co.*, *supra*, the court recognize this doctrine, saying that, "*while a corporation is not bound by engagements made on its behalf by its promoters before it is organized, it may after organization adopt them.*" In *New York, etc., R. Co.* v. *Ketchum* the supreme court of Connecticut reaches the same conclusion. The same is

unqualifiedly held in Indiana. See *Fox* v. *Turnpike Co.,* 46 Ind. 36; *Miller* v. *Gravel Road Co.,* 57 Ind. 244.

In the present case the defendant united with others to form a corporation, a preliminary subscription being obtained by a citizens' committee, chosen at a public meeting, all of the members of which became subscribers. The subscription was followed by the adoption and signing of articles of association. The corporation thereby became an entity, and those who subscribed the articles became stockholders. The proposition that such stockholder could charge the association with fraud because he was misled by the fraud of interested persons is suggestive of troublesome results. If this can be done, and the stockholder thereby escape payment for his stock, other stockholders, innocent of the fraud, would find their responsibilities proportionately increased, and the burdens of the concern would be shifted upon those members who were unable to show that they became such through the fraud of others. There would be little stability to corporations, and little safety to stockholders, if this doctrine should be sustained. In this case there not only was not a corporation in existence to be a principal, but the facts set up in the notice do not show that there was an agent of a corporation. The promoters were persons who represented the meeting, or possibly themselves, or some prospective stockholder, who, for purposes of his own, desired to see the corporation organized. They cannot be said to be agents of the corporation in any sense. These subscribers contracted with each other to form a corporation, which they did. If one was guilty of fraud upon the others in procuring their subscriptions, a remedy should exist against such person. Doubtless, a subscriber who is induced by fraud to agree to join in the organization of a corporation may refuse to do so on discovering fraud; but, by carrying out his agreement and uniting with others, he has assumed new relations with them and the public, after which his rem-

edy is restricted to action against the wrong-doers. See 4 Am. & Eng. Enc. Law, p. 201, and notes; *Carmody* v. *Powers*, 60 Mich. 26.

We think the judgment should be affirmed. Ordered accordingly.

The other Justices concurred.