ESPER v. MILLER.

1. CONTRACT UNDER SEAL—PERSONAL LIABILITY OF STRANGER.
    A party not named in a sealed instrument cannot be made
    personally liable upon it in the absence of some act of subse-
    quent ratification.

2. SAME—SALE OF LAND—CORPORATIONS—RATIFICATION.
    Several persons contributed money with the understanding that
    a corporation should be organized to buy real estate, and that
    stock should be issued to them for their contributions. M., a
    real-estate agent, was informed of this by one of the con-
    tributors, and told that, if he could acquire title to E.'s land,
    the corporation would take it. M. entered into a contract of
    purchase with E. in his own name, making the first payment
    with money contributed for the corporation, and receiving a
    commission from E., who knew he was acting for others.
    Afterwards a corporation was formed, which took an assign-
    ment of the contract, made payments thereon, and issued
    stock to the several contributors. In a suit to foreclose the
    contract, held:
        (1) That the assignment of the contract and the acceptance
    of the stock was not such a ratification by the contributors of
    M.'s act in buying the land as to render them individually
    liable for the purchase price.
        (2) But that the corporation, having been organized for the
    purpose of acquiring the land, and having taken over the con-
    tract and exercised acts of ownership, was so liable.

3. EQUITY PLEADING—PRAYER FOR RELIEF—PERSONAL DECREE.
    A bill in equity praying that the court ascertain the true
    ` vendees under a land contract, and that they be decreed to be
    liable for the purchase price, is sufficient to authorize a
    ‚ personal decree against a defendant, although he is not
    expressly charged to have been a vendee.

Appeal from Wayne; Hosmer, J. Submitted Novem-
ber 12, 1901. (Docket No. 22.) Decided September 17,
1902.

Bill by Mathias Esper and Karolina Esper against
Charles T. Miller, Edwin S. Sherrill, Elisha H. Flinn,

James H. Bell, Ernest T. Tappey, Jacob H. Hahn, Charles A. Rathbone, John W. Simons, Charles W. Hitchcock, Agnes Andrus, Kate H. Jacobs, Lewis A. McCreary, and the Fairview Land Company, for the specific performance of a land contract. From a decree dismissing the bill except as against defendants Miller and the Fairview Land Company, complainants and said company appeal. Affirmed.

*Alfred Lucking*, for complainants.

*Chamberlain & Guise*, for defendants Fairview Land Co., Flinn, Hahn, and Bell.

*Albert P. Jacobs*, for defendants Miller, Sherrill, Jacobs, and Hitchcock.

*Keena & Lightner*, for defendant Tappey.

*Russel & Campbell*, for defendant Rathbone.

*Stewart & Bliss*, for defendant Simons.

MOORE, J. This is a bill filed for the purpose of foreclosing a land contract made between the complainants and Charles T. Miller. The defendant the Fairview Land Company and the complainants have appealed. The other defendants are content with the decree as it stands.

The testimony, when considered as a whole, fairly shows that, prior to the making of the contract, a number of gentlemen were of the opinion that certain real estate was likely to appreciate in value, and agreed among themselves to form a corporation for the purpose of acquiring real estate and selling it again. A number of them contributed sums amounting in the aggregate to $8,500, with the understanding that a corporation was to be formed, and stock issued to them for the money subscribed by them. Dr. Sherrill was most active in the enterprise. He saw Mr. Miller, who was a real-estate agent, and informed him of the proposed formation of a company, and that, if he could acquire the title to certain real estate, the proposed association would take it from him. Mr. Miller

entered into negotiations for the purchase of lands owned by the complainants. On the 15th of February, 1893, a contract under seal was made between Mr. and Mrs. Esper, parties of the first part, and Charles T. Miller, party of the second part, wherein the Espers agreed, for a consideration of upwards of $32,000, to sell to the party of the second part certain real estate. This contract was in the usual form of land contracts. At about the time it was executed, the Espers were informed by Mr. Miller that the parties for whom he was acting were responsible, but they were not informed who they were, and Mr. Miller himself did not know the names of the persons, except Mr. Sherrill and Mr. Rathbone, who were to go into the proposed corporation. At the time the land contract was executed, Mr. Miller paid upon the contract $4,000, which he received from Mr. Sherrill and Mr. Rathbone, less his commission of $649.45, which was paid to him by the Espers, they indorsing upon the land contract a payment of $4,000.

Shortly after the land contract was signed, the Fairview Land Company was duly and properly organized. On the 29th of March, 1893, Mr. Miller assigned the land contract to the Fairview Land Company. A copy of this assignment was afterwards indorsed on the copy of the land contract in the possession of the Espers. Several indorsements were made in 1893. Five indorsements were made in 1894 upon the contract, nine in 1895, and six in 1896, signed by Mathias Esper. These payments were all made by the Fairview Land Company. The other payments called for by the land contract were not made, and this bill was filed. The circuit judge made a decree dismissing the bill as to all of the defendants except Mr. Miller and the Fairview Land Company, fixing the amount due upon the contract, and providing for a sale of the land, a report upon the amount of the deficiency, if any, and for a personal decree for the deficiency against the Fairview Land Company.

The first question demanding consideration is whether a personal decree should have been rendered against the

individuals who subscribed for stock and became members of the corporation which was afterwards formed. In *Ferris* v. *Snow*, 124 Mich. 559 (83 N. W. 374), it was held that a party not named in a sealed instrument cannot be made liable upon it in the absence of some .act of subsequent ratification. See the authorities cited in the opinion. It is claimed on the part of the complainants that when the contract was assigned to the corporation, and stock was issued to and accepted by the individuals, this was a ratification of the acts of Mr. Miller in buying the land. We cannot agree with that conclusion. Who of the individuals expected personally to pay $32,000 for the land, or as individuals expected to get any title to the land? Mr. Miller was not buying the land for himself. He did not understand he was buying it for Dr. Sherrill, or for any other individual, but he understood he was buying it for an association which was afterwards to be formed, and which was in fact formed, and to whom he assigned the contract. No individual subscribed any money to buy an individual interest in land, the title to which was to be held by them as individuals, but the subscriptions were made for stock in a corporation afterwards to be formed, which was to issue stock for the money subscribed. No individual ever did get any interest in the land as an individual. The fact that the money which was subscribed for stock was used in making the $4,000 payment did not give the persons who paid in that money any interest in the land. 3 Comp. Laws, § 8835. We think the circuit judge was right in holding that a personal decree could not be rendered against the individuals.

Was he right in holding that a personal decree could be rendered against the Fairview Land Company? It is said the pleadings are not such as to warrant such a decree. The bill of complaint set out the understanding of the complainants. In the prayer, among other language used, was the following:

"And that this court will ascertain from the proofs and determine who were the real principals as vendees in said

land contract, * * * and that the true principals in said land contract, whoever they may be found to be, shall be decreed by this court to be liable to your orators on said land contract personally for the said purchase moneys remaining due and unpaid on said land contract, and that such land contract be enforced in all respects against the true principal vendees, and against all persons liable thereon, and liable to your orators on account thereof, and for such purchase moneys, and that the persons personally responsible be decreed to make payment to your orators of the amounts remaining unpaid upon said land contract to your orators, * * * and that your orators may have such other relief or further relief as the premises will warrant."

We think this prayer sufficiently broad. *Proctor* v. *Plumer*, 112 Mich. 393 (70 N. W. 1028).

It is urged upon the part of the Fairview Land Company that, as it was not in existence when the contract was made, it cannot be bound by the acts of Mr. Miller. It must be conceded the authorities are not in harmony upon this proposition. It has already appeared that the complainants regarded Mr. Miller as acting for them as well as for his undisclosed principal. They paid to him upwards of $600 in the way of commissions for making the sale. He and they knew he was not acting for himself. He knew he was not acting for individuals, but for a corporation, which was to be called into being later; and, when it had a corporate existence in fact, he assigned the land contract to it, making the transaction, so far as he was concerned, as between himself and the corporation, a completed one. His knowledge was imputable to the complainants. We think there can be no reasonable doubt that the corporation, after it had been formed, recognized that Mr. Miller had been acting for it, and took over such title as he had in the contract, for which money had been paid in by prospective stockholders, to whom stock, for the money paid in, was issued. Mr. Miller paid no money of his own. He never expected to pay any, and it was not expected he would pay any. There was abundant evidence that the corporation undertook to ratify his acts.

*Hammond* v. *Hannin*, 21 Mich. 374 (4 Am. Rep. 490); *Hanchett* v. *McQueen*, 32 Mich. 21.    It is certainly not equitable that a company called into being for a definite purpose, for whom property has been acquired by a written contract, can take over that property, by receiving an assignment of the contract and exercising acts of ownership over the property, without performing that part of the contract which is unperformed; and such we do not understand to be the law.    We think the decree holding the Fairview Land Company liable under the facts disclosed by the record is sustained by *Whitney* v. *Wyman*, 101 U. S. 392; *Bell's Gap R. Co.* v. *Christy*, 79 Pa. St. 54 (21 Am. Rep. 39); *Grape Sugar Manfg. Co.* v. *Small*, 40 Md. 395; *Van Schaick* v. *Railroad Co.*, 38 N. Y. 346; *Battelle* v. *Pavement Co.*, 37 Minn. 89 (33 N. W. 327); *Mesinger* v. *Saddle Co.*, 44 App. Div. 26 (60 N. Y. Supp. 431); and *St. Johns Manfg. Co.* v. *Munger*, 106 Mich. 90 (64 N. W. 3, 29 L. R. A. 63, 58 Am. St. Rep. 468).

Decree is affirmed, with costs.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.