# Richmond.

VIRGINIA LAND CO. V. HAUPT.

MARCH 8th, 1894.

1. CORPORATIONS—*Subscription—Fraud.*—Where one is fraudulently induced by an agent or promoter of a corporation to subscribe to its capital stock, *held*, he may repudiate the contract at his discretion.
2. IDEM—*Case at bar.*—Where such promoter induced defendant, in ignorance of the fact that the former had an option on the land which the corporation was formed to purchase, and in reliance on the former's supposed disinterested and superior judgment, to subscribe to the capital stock, and the defendant was thereby misled to his injury into making a contract which otherwise he would not have made, *held*, the defendant is not bound by his subscription.
3. IDEM—*Waiver.*—Nor does such defendant waive his right to annul his said subscription by giving to said promoter a proxy to represent him in the first stockholders' meeting, when the facts as to the promoter's option on said land was disclosed, as defendant should not be affected by notice to the promoter of what the latter knew from the beginning and did not disclose to him.
4. IDEM—*Laches.*—*Laches* does not begin to run until subscriber is chargable with notice that a fraud has been perpetrated upon him.
5. IDEM—*Notice—What is—Duty to investigate.*—Mere suspicions or random statements heard in public, or in stockholders' meetings, do not necessarily constitute notice. But after a subscriber's suspicions are reasonably aroused, it is his duty to investigate at once.
6. IDEM—*Burden of proof.*—Corporation has the burden of proof in asserting that the subscriber had notice and was guilty of *laches*.

Error to judgment of circuit court of city of Roanoke, rendered at its January term, 1893, in an action at law wherein the Virginia Land Company was plaintiff and S. B. Haupt

was defendant.  The judgment being adverse to the plaintiff company, it appealed.  Opinion states the case.

*Watts, Robertson & Robertson,* for plaintiff in error.

*Griffin & Glasgow,* for defendant in error.

Lewis, P., delivered the opinion of the court.

The defendant in error was sued by the Virginia Land Company to recover certain unpaid assessments on the capital stock of the company, aggregating $2,800.  The principal grounds of defence were (1) Fraud in the procuring the contract of subscription; and (2) a material variance between the prospectus and the charter of the company.  The jury found for the defendant, and the court refused to disturb the verdict.

The defendant subscribed to the stock at the instance of one O'Leary, who was a real estate agent at Roanoke and one of the promoters of the company.  It was proposed in the prospectus "to organize a company for the purchase of a certain tract of land, lying near the said city, containing about 550 acres, and to lay it out in residence lots, and to develop its natural attractions."  By the charter, subsequently obtained, the company was authorized to buy land not exceeding 5,000 acres; also personal property, and to issue mortgage bonds; to loan money; to develop lands; to construct street railways, and to use cars impelled by any kind of motive power; to erect and operate water, gas, and electric works, etc., etc.

O'Leary was known to the defendant as a successful business man, and his name headed the subscription list.  When he solicited the defendant to subscribe, he informed him, in answer to a specific inquiry, that the land proposed to be purchased belonged to Yates, Moormaw, and Moorman.  In point of fact O'Leary and one Christian, another subscriber to the stock and a promoter of the company, held options on the

land, which fact was not disclosed to the defendant. O'Leary recommended the stock to the defendant as a desirable investment, and upon his advice the defendant agreed to take one hundred shares.

After the organization of the company the land was transferred to the company, and in consequence, O'Leary and Christian realized a large profit.

The company was chartered early in March, 1890, and on the 19th of the same month the first stockholders' meeting was held, at which meeting O'Leary represented the defendant as his proxy. At the same meeting an assessment of ten per cent of the capital stock was ordered, notice of which was afterwards sent to the defendant; and on the 23d of the ensuing August another assessment of five per cent was ordered. Upon receipt of notice of this last assessment the defendant wrote the secretary of the company, as follows :

"Dear Sir,—I have your notice of September 1st, calling for an assessment of $500—five per cent on 100 shares of your stock. If you will please refer to my letter of April 28th, addressed to your treasurer, you will notice that I am not a stockholder in your company. Although I have never received a reply to this letter, I take it that in the absence of such acknowledgment, my stock was, as a matter of course, cancelled. So that there may be no further misunderstanding in the matter, however, I beg to advise that I am not a stockholder in the Virginia Land Company, having paid no assessments whatever on the subscription."

In the notice of the ten per cent assessment of March 19, 1890, it was said : "This amount must be paid promptly or the stock will be declared forfeited," and in response to this, the defendant's letter of the 28th of April, above referred to, was written, which is as follows :

"Dear Sir,—I have your favor of the 24th instant, calling attention to ten per cent assessment on the Virginia Land Company's stock, and in reply beg to say that recent financial

arrangements in another direction that I am suddenly called upon to provide for, will make it impossible for me to pay this assessment now, and to prevent delays, as well as to avoid being a hindrance in any way to the success of the company, I will be glad if you will consider my stock forfeited, as provided for in notice of assessment. * * * I will be glad, therefore, if you will dispose of my stock to other parties. I have been informed that the stock is selling at a premium, so that I presume there will be no difficulty in doing this. Having paid nothing on the stock, I am, of course, not entitled to anything from it."

. At the trial the defendant testified that when he subscribed to the stock he had no other information respecting the proposed enterprise than such as he obtained from the prospectus and what was told him by O'Leary; .that he was induced to subscribe by the urgent solicitation of O'Leary, in whose judgment and integrity he had confidence, and who recommended the stock as a good investment. He also testified that he had no idea that O'Leary was interested in the land which it was proposed to buy otherwise than as a stockholder, and that so far from the fact being disclosed to him, O'Leary, when questioned on the subject, represented that it belonged to Yates, Moormaw and Moorman. He testified, further, that he would not have consented to subscribe had . he known of the promoters' interest in the land, and that he had no intimation of any such thing as " a promoters' fund " until several weeks after he had subscribed.

The court, among other things, instructed the jury that if they believed from the evidence that O'Leary and Christian held options on the land, and that O'Leary induced the defendant to subscribe in ignorance of that fact, relying on his (O'Leary's) supposed disinterested and superior judgment, and that he, the defendant, was thereby misled, to his injury, into making a contract that he otherwise would not have made, then the subscription was voidable at his option.

This instruction propounds the law correctly.   The authorities are abundant in support of the general rule that a person fraudulently induced by an agent of a corporation—and a promoter is an agent—to subscribe to its capital stock, may, at his option, repudiate the contract; and a fraud may consist as well in the suppression of what is true as in the representation of what is false.   Indeed, the law is that where the person solicited to subscribe has no other information on the subject than that which the agent chooses to convey, the statements of the agent ought to be characterized by the utmost candor and honesty.   1 Cook, Stock, Stockh. and Corp. Law (3d ed.), sec. 147; *Crump* v. *U. S. Mining Co.*, 7 Gratt., 352; *Bosher* v. *R. & H. Land Co.*, 89 Va., 455; *Directors, &c.* v. *Kisch*, L. R. 2 H. L. App. Cas., 99.

It is contended, however, that the defendant has by his conduct waived the right to annul the contract in question. But there can be no waiver in a case of this sort without knowledge of the facts, and such knowledge on the part of the defendant has not been shown.   He says he had an intimation, a few weeks after the organization of the company, that there was a large promoters' fund, but as to who were the parties interested in the fund he was not informed.   He made inquiry on the subject, but could ascertain nothing definite, and relied, he says, on his letter of the 28th of April, in reply to the notice of the first assessment, to which he received no reply.   And afterwards when notified of the five per cent assessment he promptly replied, calling attention to his said letter, and saying he was not a stockholder.   He also called the attention of one of the directors of the company to the intimation he had had in regard to the promoters' fund, and informed him that he repudiated the contract.

It is true he gave a proxy to O'Leary to represent him at the first stockholders' meeting, at which meeting the facts in regard to the promoters' options on the land were disclosed. But, as was well said in the argument at the bar, it would be

absurd to hold that he was affected by notice to O'Leary of what the latter knew from the beginning, and failed to disclose to him. And if he was not affected by notice to O'Leary, then there is no proof that he received any certain information of the facts constituting the fraud complained of before the institution of the present action.

In treating of *laches* as a bar to the subscriber's remedies, Cook says: "The date from which *laches* begins to run is the time when the subscriber is first chargeable with notice that a fraud has been perpetrated upon him. Mere suspicions or random statements heard in public or in stockholders' meetings do not necessarily constitute notice. But after a subscriber's suspicions are reasonably aroused, it is his duty to investigate at once. The corporation has the burden of proof in asserting that the subscriber had notice and was guilty of *laches*." 1 Cook, Stock, Stockh. and Corp. Law (3d ed.) sec. 162.

Applying these principles to the present case, we are of opinion that, upon the ground of fraud, the case is with the defendant, and that there has been no waiver of the fraud on his part; and as this view is decisive of the case, it is needless to consider whether the case is within the ruling in *Norwich Lock Man'g Co.* v. *Hockaday*, 89 Va., 557, on the ground of a variance between the prospectus and the charter of the company.

There were a number of exceptions taken to rulings of the court during the progress of the trial, to review which, *seriatim*, would extend this opinion to a great length. It is enough to say, in this connection, that the case was submitted to the jury in substantial conformity with the views expressed in this opinion, and that the judgment must be affirmed.

JUDGMENT AFFIRMED.