# CHARLESTON.

## WEST END REAL ESTATE COMPANY *v.* NASH.

Submitted January 20, 1902.    Decided March 29, 1902.

1. SUBSCRIPTION—*Purposes Changed Without Notice.*
   A subscription to a proposed corporation is not binding on the subscriber if the purposes of the organization are materially changed without his knowledge, consent or confirmation, express or implied.    (p. 344).

2. SUBSCRIBER—*Proposed Company—Liability.*
   A person, who was induced to subscribe to a proposed company being organized for the purpose of purchasing and selling

a certain tract of land by representations in a prospectus issued by the promoters of such company, who have an option on such land, but conceal the fact from such subscriber and who afterwards have the same conveyed to the company of which they become the directors and officers reserving to themselves secretly a promoter's fund of $30,000 as part of the price of such land, is not bound by his subscription unless he confirms the same after he learns of the existence of such promoter's fund.    (pp. 344, 345).

3.   SUBSCRIPTION—*Confirmation—Fraud.*

Such subsequent confirmation to be binding on the subscriber must be a deliberate act with full knowledge of the fraudulent concealment and of the rights intended to be waived.  (p. 344).

4.   DEMURRER TO EVIDENCE—*Instruction to Jury.*

If a demurrer to the evidence would have been sustained, an instruction to the jury to find for the defendant, even after the jury has indicated an intention to find for the plaintiff, is not reversible error.    (p. 345).

Error to Circuit Court, Mercer County.

Action by the West End Real Estate Company against H. M. Nash.   Judgment for defendant.   Plaintiff brings error.

*Affirmed.*

DOUGLASS & MCGRATH, for plaintiff in error.

A. W. REYNOLDS, for defendant in error.

DENT, PRESIDENT:

The West End Real Estate Company of Norfolk complains of a judgment of the circuit court of Mercer County rendered on the 28th day of August, 1899, against it as plaintiff in favor of H. M. Nash, defendant.

The plaintiff sued the defendant for a balance of seven hundred and ten dollars due on a stock subscription made by the defendant in the year 1890 for ten shares at the par value of one hundred dollars each.   Defendant filed four special pleas to the effect that he had been misled into making such subscription by the fraudulent representations of the promoters of such company prior to its organization in that they represented in their prospectus that the proposed real estate of the company was worth two hundred and fifty thousand dollars and would only cost them one hundred and seventy-five thousand dollars, at

which latter sum the capital stock was fixed, thus giving all
share holders a handsome profit at once; and that he had found
out since the institution of this suit that in such sum of one hun-
dred and seventy-five thousand dollars the promoters who ob-
tained the stock subscriptions and the charter and organized
the company, had included a sum of more than thirty thousand
dollars for themselves, which they had not revealed or made
known to him at any time until it came to his knowledge on
the taking of the depositions in behalf of the plaintiff; that
also he had learned the contents of the charter and ascertained
that the object of the proposed corporation had been changed
without his knowledge, assent or after confirmation from "the
purpose of purchasing, improving and disposing of several val-
uable tracts of land in the city of Norfolk," to the following
purposes, to-wit: "To purchase, hold, improve and dispose of
real estate, bonds, notes and other securities; to purchase, hold
and dispose of personal property; to borrow money with which
to carry on its business; to issue and dispose of bonds and
promissory notes, or either of them, in such amounts as may be
expedient, and to secure the payment of such bonds and notes,
or either of them, by the hypothecation or conveyance of its
personal or real property or otherwise; to receive money on de-
posit and pay interest thereon; to invest such money received
on deposit and other moneys of the company in or lend the
same upon stocks or any other security, real or personal, or
use the same in purchasing or improving real or personal estate,
to build or make improvements on real estate, to build bridges
for the purpose of affording ingress or egress from or of other-
wise improving such lands as it may acquire, to build wharves,
piers, bulkheads or any other structure or improvement upon
its property; to improve such lands as it may hold by the open-
ing or establishment of streets or avenues or otherwise; to guar-
antee bonds, securities and credits; to engage in various manu-
facturing enterprises; to subscribe to the capital stock of other
corporations, and to do anything of any other description that
may come within the legitimate scope of its business;" that the
defendant never attended any meeting of the corporation, al-
though he gave George R. Dunn———, who was one of the pro-
moters and who afterwards became a director a power of attor-
ney on his solicitation to act for him; that as soon as he learned
of the misrepresentations made to him and which led him to

subscribe to the capital stock of the proposed company, he re-
fused to have anything to do with it, and repudiated the matter.

On these pleas issue was joined and the proof on behalf of the
plaintiff fully established the material allegations thereof. The
plaintiff attempts to show that defendant by his conduct took
such part by payment on his subscription, by his letters in re-
gard thereto and by his being present and represented by his
agent Dunn at the first meeting and organization of the com-
pany, as to condone, ratify and confirm the misrepresentations
as to the value of the real estate, the promoter's thirty thou-
sand dollar fund and the change in the charter. Defendant
testifies, however, and his evidence is not contradicted, that he
never knew of the change in the purposes of the corporation un-
til the bringing of this suit, nor of the promoter's fund, and
that as soon as he found out the true value of the real estate, he
repudiated the transaction unless the promoters would make
their promises good. In this he is borne out by his letters
written to the officers of the corporation, seeking information.
All his transactions with the company occurred in 1890 and
1891, except there is credit of a payment alleged to have been
made by him of one hundred and thirty-eight dollars and ninety
cents of November 10, 1893, entered in the company's books.
Of this he denies all knowledge. This is the only matter of dis-
pute and if substantiated would not affect the result.

In the case of *West End Co.* v. *Clairborne*, 47 W. Va. 734,
being a suit brought by the same company on a similar subscrip-
tion to stock, it is held: "A subscription to stock of a joint
stock company procured by fraudulent representations is void-
able at the election of the subscriber on discovery of the fraud;
and such fraud is a good defence to an action by the company
on the subscription unless the contract has been subsequently
ratified by the subscriber." "A stock holder is bound at his
peril to take notice of the charter and by-laws of the company
of which he is a member. If he pays any instalment on his
stock, or participates in any meeting of the stockholders after the
charter is obtained, he is estopped to deny knowledge of its
terms and provisions, however much it may vary from his con-
tract of subscription." These are the principles that must gov-
ern in this case. The defendant did not attend any meeting of
the stock holders, and did nothing to ratify his stock subscrip-
tion after the charter was obtained. He gave George R. Dunn

a power of attorney to act for him at the meeting to be held for the formation of a company in accordance with the terms and purposes of the prospectus, but there is no evidence to indicate that he authorized him to exceed these powers in any manner. Dunn's evidence is not taken, and hence it must be considered as adverse to the plaintiff's pretensions. *Union Trust Co.* v. *McClelland,* 40 W. Va. 405. Even if it were, he could not act as agent both for and against defendant at the same time. An agent must be loyal to his principal, and if he does acts antagonistic to his principal either in favor of himself or third parties such acts are frauds upon the rights of the principal and may be treated as void by him. Am. & En. En. Law, (2d Ed.) 1071, 1072, 1073. So that the acts of Dunn in so far as he pretended (if he did so, of which fact there is no evidence) to act for the defendant at the charter meeting of the stockholders, must be regarded as a continuation of the original fraud, rather than a ratification or condonement thereof. There is no act on the part of the defendant other than his apparent silence that can be construed into a ratification or condonation of the fraud practiced upon him in securing his subscription. His silence cannot be charged against him, for it was occasioned by his confidence in the prospectus and its promoters. *West End Co.* v. *Clairborne,* cited. Hence the defendant cannot be held to be a subscriber to the company as changed in its purposes by its charter. *Greenbrier Industrial Exposition* v. *Rhodes,* 37 W. Va. 738; *Norwich Lock Mnfg. Co.* v. *Hockaday,* 89 Va. 557, (16 S. E. 877). The fact that defendant was kept in ignorance of the large promoter's fund until after the bringing of this suit entitled him to avoid his subscription. *Virginia Land Co.* v. *Haupt,* 90 Va. 533 (19 S. E. 168). On a demurrer to the evidence this case is plainly for the defendant under the holdings of the Virginia courts. The plaintiff insists that although this be true, that the court had no right to instruct the jury to find for the defendant at the time such instruction was given. The jury had been sent to their rooms to consider their verdict at the time the instruction was asked, and while the court had the matter under deliberation, the jury appeared with a verdict in favor of the plaintiff. The court would not receive it, and sent them to their room. They were afterwards brought into court and instructed to find for the defendant. This was irregular, but how has the plaintiff been in-

jured by it? Its answer is that it was entitled to its verdict, and if it was wrong and set aside by the court, if it could manage to get two more similar, the court would be powerless to set the last aside although wrong. Such a probability is most too remote to furnish the basis of judicial action. When litigation is abortive and useless it should be ended. Justice should be administered without sale, denial or delay, or fear, favor, or affection. This case is clearly for the defendant on both the law and evidence. Why then should this Court because of an irregularity in the action of the circuit court promotive of justice, reverse the judgment and remand the case for a new trial which could not possibly reach a different result? In this respect this case is governed by the case of *E. E. White's Admr.,* etc., v. *The L. Hoster Brewing Co.,* decided herewith, and *Ketterman* v. *Railroad Co.,* 48 W. Va. 606.

The judgment is affirmed.

*Affirmed.*