# Wytheville

## WHITE V. AMERICAN NATIONAL LIFE INSURANCE CO.

### · June 12, 1913. ·

1. DEMURRER TO EVIDENCE—*Concessions—Waiver.*—Upon a demurrer to the evidence, the demurrant admits the truth of the demurree's evidence and all just inferences that a jury might properly draw therefrom, and waives all of his own evidence in conflict with that of the demurree, and all inferences from his own evidence, although not in conflict with the demurree's evidence, which do not necessarily result therefrom.

2. FRAUD—*Waiver—Knowledge of Rights—Burden of Proof.*—A plaintiff who admits fraud in the procurement of the contract in suit and relies upon a waiver of the fraud by the defendant has the burden of proof to show by clear evidence that the defendant, after the fraud became known to him, waived the same and ratified the contract. The waiver must be distinctly made, with full knowledge of the rights intended to be waived. The fact that a party knows his rights and intends to waive them must plainly appear.

3. FRAUD—*Misrepresentation—Materiality.*—The representation by an agent for the sale of stock in a corporation that his principal will at any time, upon request, repurchase the stock of any stockholder who may choose to dispose of the same, is a material representation and sufficient, if untrue, to avoid the contract.

4. PRINCIPAL AND AGENT—*Agency—Continuance—Presumption.*—An agency once established will be presumed to continue, in the absence of evidence to the contrary.

5. FRAUD—*Acquiesence—Laches—Estoppel—Mere Delay.*—Mere delay will not estop a purchaser of stock from interposing the defense that the contract was procured by the fraud of the seller's agent, where the rights of third persons have not intervened, and the position of the seller has not been injuriously affected by the delay. Acquiescence or affirmance does not bind the purchaser if induced by a reasonable expectation on his part that the fraud will be remedied.

6. FRAUD—*Affirmance—Attending Meeting of Stockholders.*—Giving a proxy to represent a stockholder at a meeting of stockholders does not operate as a waiver of the stockholder's right to rescind the contract for fraud in its procurement where the meeting was only a few days after the subscription was made, and long before the fraud was discovered.

20

Error to a judgment of the Circuit Court of Mathews county in a proceeding by way of motion for a judgment for money. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Buford, Lewis & Peterson* and *J. Boyd Sears,* for the plaintiff in error.

*Fred Harper,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is a motion by the American National Life Insurance Company (hereinafter designated as the plaintiff) against C. C. White (hereinafter designated as the defendant) to recover the amount of two promissory notes evidencing the deferred instalments of the purchase price for seventy-five shares of the plaintiff's stock, sold by its agent to the defendant.

The defendant by special pleas of set off, under Va. Code, 1904, sec. 3299, interposed the defense that he had been induced to purchase the stock by certain false and fraudulent representations made to him by the plaintiff's agent; that consequently he was entitled to a rescission of the contract and to recover back the cash payments made by him on the stock, and also to be relieved from liability on the notes upon which this motion was brought.

The plaintiff demurred to the defendant's evidence, and to the ruling of the court sustaining the demurrer to the evidence and rendering judgment against the defendant for the sum demanded, this writ of error was awarded.

The allegation that the defendant was induced to buy the stock by false representations is admitted. Adopting

the language of the brief of the plaintiff's counsel, "the case before the court presents this simple, concrete question: *Did the defendant below, who had been induced by the false representations of the plaintiff's agents to enter into a contract for the purchase of . . . the stock, waive the fraud after its discovery by him and, by his conduct, estop himself from interposing that fraud as a defense to an action upon the contract?"*

The foregoing question is to be considered and answered in light of the familiar and oft-repeated rule applicable to a demurrer to the evidence, namely: that the demurrant admits the truth of the demuree's evidence, and all just inferences that a jury might properly draw therefrom, and waives all of its own evidence in conflict with that of the demuree; and all inferences from its own evidence, although not in conflict with the demurree's evidence, which do not necessarily result therefrom. And, moreover, the burden of proof rests upon the plaintiff to show by clear evidence that the defendant, after the fraud became known to him, waived the same and ratified the contract. *Virginia Land Company* v. *Haupt,* 90 Va. 533, 19 S. E. 168, 44 Am. St. Rep. 939; *Wilson* v. *Carpenter,* 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824; *West End Company* v. *Claiborne,* 97 Va. 734, 34 S. E. 900.

In *Cumberland Coal, &c., Co.* v. *Sherman,* 20 Md. 117, 149, 150, the court says: "Confirmation according to the books must be a solemn and deliberate act . . . and particularly where the original transaction was infected with fraud, the confirmation of it is so inconsistent with justice, and so likely to be accompanied with imposition that the courts watch it with the utmost strictness, and do not allow it to stand but on the clearest evidence."

In *Wilson* v. *Carpenter, supra,* at page 192, the court says: "No man can be bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of

the rights which he intends to waive, and the fact that he knows his rights, and intends to waive them, must plainly appear." Citing *Montague's Admr.* v. *Mossey,* 76 Va. 307.

In the light of these well settled principles, we shall briefly review the salient facts in relation to this transaction.

In December, 1907, the defendant subscribed to fifty shares of the stock, and in January following bought the remaining twenty-five shares, making the cash payments and giving his two promissory notes for the deferred instalments of the purchase money. At the time of the sale and as an inducement to the defendant to buy, Kulp, the agent of the plaintiff, represented that his principle would at any time upon request repurchase the stock of any stockholder who might choose to dispose of the same.

In the fall of 1908, the defendant, having heard rumors affecting the financial condition of the company, addressed a letter of inquiry to the president on that subject, and likewise offering his stock for sale in accordance with the promissory representation of the agent. The president replying to that letter did not repudiate the agent's representation, nor did he in terms decline to repurchase the stock for the company, but said: "Personally, I am loaded up with all that I can carry, and cannot at this time purchase any more." At a still later date the defendant had a conversation with the secretary of the plaintiff, by long distance telephone, and was informed by him that the company would not pay a dividend for the year 1908, as promised by Kulp. In January, 1909, the defendant, who resided in Mathews county, in company with a fellow-countyman, Dr. Vaden, who had also bought stock of Kulp, went to Lynchburg to attend the annual stockholders' meeting. However, though present, he did not vote or participate otherwise in the proceedings; but his investigations convinced him of the falsity of the original representations

of the agent which induced him to subscribe to the stock. He straightway, in company with Dr. Vaden, sought out Kulp and they both insisted that he redeem the promise made by him on behalf of the company to repurchase their stock. In response to this demand, Kulp agreed that he would either place their stock elsewhere or take it off their hands. In point of fact he kept faith with Dr. Vaden, and the company adjusted the matter to his satisfaction; but, with respect to the defendant, the plaintiff ultimately repudiated Kulp's agreement to repurchase the stock on the ground that at the time he had ceased to be its agent, and was representing the defendant. There was no evidence as to the termination of the agency, and the relation having been once established, it will be presumed to have continued in the absence of proof to the contrary. 19 Am. & Eng. Ency. L. (1st ed.) 75-c; 31 Cyc. 1305; 4 Wigmore on Ev., sec. 2530.

In April, 1909, the defendant wrote to the secretary and called his attention to the representations of the agent which had involved him in the transaction, and on August 30, 1909, he wrote a letter of earnest supplication to Kulp, informing him of his inability longer to carry the burden and beseeching him to fulfil his promises; and, finally, after persistently, but in vain, seeking relief in accordance with the stipulations of his agreement with the agent, on July 14, 1910, he caused a letter to be addressed to the plaintiff, denying all liability on account of his stock subscription.

From the discovery of the fraud by the defendant until his final abandonment of the contract, the relations of the parties had remained in *statu quo*. No further payments had been made by the defendant on the subscription, and do dividend or other benefit had been received by him from the plaintiff, and neither the rights of creditors nor of any other innocent third party had intervened, nor had the position of the plaintiff itself been injuriously affected by

the delay. It thus appears that the delay of the defendant in rescinding the contract after discovering the fraud was the result of a reasonable expectation on his part that the plaintiff would live up to the repeated assurances of its agent and grant him the relief to which he was entitled. In these circumstances mere delay will not estop a purchaser from interposing the defense that the contract was procured by fraud.

"Acquiescence or affirmance does not bind the stockholder, if induced by a reasonable expectation on his part that the fraud would be remedied." 1 Cook on Corporations, p. 435, sec. 161, citing *West End Land Co.* v. *Claiborne,* 97 Va. 734, 34 S. E. 900.

In *Grosh* v. *Ivanhoe, &c., Co.,* 95 Va. 171, 27 S. E. 844, it is said: "Whether a party seeking a rescission of his contract has forfeited his right to it by laches or misconduct depends upon the facts or circumstances of the particular case. If the rights of creditors have intervened, or an innocent third party has acquired an interest in the property, or if in consequence of his delay the position even of the wrongdoer is affected, a party seeking rescission of his contract on the ground of fraud will be deemed to have waived his right to rescind (*Martin* v. *South Salem, &c., Co.,* 94 Va. 28, 26 S. E. 591; Add. on Conts. 772; *Hurt* v. *Miller,* 95 Va., page 32, 27 S. E. 831) ; but there is nothing of the sort in this case. It is admitted that the defendant company has no creditors to be affected by a rescission of the contract; no effort is made to show that the defendant company could have resold the lots had the appellant repudiated his contract sooner."

The fact that the defendant gave the president of the company a proxy to represent him in a meeting of the stockholders is also relied on as evidence of ratification of the contract. The meeting referred to was in January, 1908, only a few days after the subscription by the defen-

dant to the first block of stock, and, of course, long before the fraud was discovered. In such case, giving the proxy did not operate as a waiver of his right to rescind the contract for fraud. *Va. Land Co.* v. *Haupt,* 90 Va. 533, 19 S. E. 168, 44 Am. St. Rep. 939.

In conclusion, we are of opinion that the evidence does not show a ratification of the contract by the defendant or such acquiescence therein as should estop him from relying upon the defense that the contract was procured by the fraudulent representations of the plaintiff's agent.

For these reasons the judgment of the circuit court must be reversed, and this court will enter such judgment as the trial court ought to have rendered, overruling the demurrer to the evidence and awarding the plaintiff in error the damages provisionally assessed by the jury.

*Reversed.*