## Wytheville.

## RHOADES AND OTHERS V. BANKING, TRUST AND MORTGAGE COMPANY AND OTHERS.

### June 12, 1919.

1. STOCK AND STOCKHOLDERS—*Subscription—Misrepresentation or Fraud—Rescission.*—One who is induced by fraud or material false representations as to matters of fact to subscribe for stock in a corporation may rescind his agreement on discovery of the fraud, and may have the aid of a court of equity to make his rescission effective and either to release him from liability on his subscription or to recover back what he has paid, and it is immaterial whether the party making the material false representation knew the representation to be false at the time. it was made or not, and whether made with fraudulent intent or not.

2. STOCK AND STOCKHOLDERS—*Subscription—Misrepresentation or Fraud—Existing Fact.*—The misrepresentation, to entitle a. subscriber of stock to relief, must have been one of existing fact. Mere puffing statements or talk as to future prospects, consisting of matters of opinion, will not have that effect.

3. STOCK AND STOCKHOLDERS—*Subscription—Misrepresentation or Fraud—Proof.*—Allegations of misrepresentation, partaking as they do of the nature of allegations of fraud, even in cases where no actual fraudulent intent exists, must be clearly proved by evidence which is unequivocal and convincing in its character.

4. STOCK AND STOCKHOLDERS — *Subscription — Misrepresentation or Fraud—Rescission—Case at Bar.*—Among the objects and purposes for which a corporation was organized was a plan that. it would lend money on real estate mortgages at five per cent. per annum and would. obtain the money with which to do such business from northern insurance companies at the rate of four per cent. per annum. It was in evidence that agents soliciting subscriptions to the stock of the proposed corporation represented to certain subscribers that a contract had been in fact. secured and made with northern insurance companies to furnish as much as $20,000,000 at not over four per cent. per an-that such subscribers believed and relied on such representa-

tion as an existing fact; that it was a material inducement to them to enter into the subscription contracts; that but for their belief in such representation they would not have entered into such contracts; and that upon learning that the representation was untrue they at once repudiated the subscription contracts.

*Held:* That such misrepresentation by the soliciting agents, although unauthorized, was a sufficient ground for rescission of the subscription contracts.

5. STOCK AND STOCKHOLDERS — *Subscription — Misrepresentation — Waiver of Right to Rescind—Case at Bar.*—In the instant case, appellants, the subscribers to the stock of a proposed corporation, whose subscriptions had been obtained by misrepresentation, appointed an attorney at law to attend the organization meeting of the company and ascertain what the facts were in connection with the representation and with the affairs and prospects of the company, and some of them constituted him their proxy to vote their stock at the meeting, without, however, giving the attorney authority to repudiate the contracts of stock subscription, or ratify such contracts and waive the rights of appellants to repudiate them. While appellants suspected the existence of the misrepresentation, none of them had actual knowledge of such misrepresentation until after the organization meeting. The attorney attended the meeting, filed his proxies, listened and attended to what was said and done, but said nothing, made no objection to the proceedings and did not vote the stock he represented as proxy.

*Held:* That this did not constitute a ratification of the subscription contracts by the subscribers, nor a waiver of their right to repudiate their contracts on the ground of misrepresentation.

6. WAIVER—*Fraud—Knowledge of Fraud.*—The question of waiver is largely one of intent. Hence acts done in affirmance of a contract can amount to a waiver of fraud only when they are done with full knowledge of the fraud and of all the material facts, and with the intention clearly manifested of abiding by the contract and waiving all right to recover on the deception.

7. STOCK AND STOCKHOLDERS — *Subscriptions — Misrepresentation— Election to Affirm or Disaffirm.*—Notwithstanding the existence of a material misrepresentation inducing subscriptions to stock, subscribers, upon a full knowledge on their part, had the right of election to affirm or repudiate their contracts.

8. STOCK AND STOCKHOLDERS—*Subscriptions—Authority of Attorney and Proxy to Affirm or Repudiate Subscription Contracts.*—A proxy for certain subscribers to the stock of a corporation, who also represented some of them as attorney, at an organization meeting of a corporation, upon the discovery that the subscriptions were obtained by misrepresentation, had no author-

41

ity to act for the subscribers in making election whether they would affirm or repudiate the subscription contracts. That was not within the scope of his actual or apparent authority as proxy or as attorney. His actual and apparent authority as proxy coincided, indeed, and was confined to such matters as could and did properly come before the organization meeting for action. And as attorney at law his actual and apparent authority likewise coincided, as an attorney at law, as such, has no right to do any act which surrenders a substantial right of his client.

9.  AGENCY—*Knowledge of Agent as Knowledge of Principal.*—In some cases the law of agency will conclusively impute to a principal the knowledge of his agent acquired by the latter under certain circumstances; but such constructive knowledge will not be imputed to a principal under circumstances which negative the possibility of actual knowledge on his part of the existence of a right of election to affirm or repudiate a contract because of misrepresentation, and where no agent is authorized to exercise such right of election. The knowledge of the principal in such case must be actual to give rise to such duty of election.

Appeal from a decree of the Corporation Court of city of Petersburg.   Decree for defendants.   Plaintiffs appeal.

*Reversed as to certain of appellants, and*
*affirmed as to the other appellants.*

This suit in equity by appellants, who were subscribers to certain shares of the capital stock of the banking, trust and mortgage company (hereinafter called company), against appellees, has for its object the cancellation of appellants' stock subscription contracts, and the recovery back of such payments as were made thereon, upon the ground that such contracts were obtained by a fraudulent misrepresentation.

According to the testimony for the company, among the objects and purposes for which it was organized was the plan that it would lend money on real estate mortgages at 5% per annum interest, and would obtain the money with which to do such business from New York or northern in-

surance companies at a rate of 4% per annum interest upon obligations of the company which would be secured by such mortgages as collateral; that the organizers of the company had faith in this plan, considered it entirely practical and feasible, felt that the "field for this business was large and lucrative," and that the appellee would "be able to do a large and successful business in this line alone, in addition to its operations in other fields." And the testimony for the company admits that such representation was made to appellants, but claims that it was made as an expectation only, as an inducement to appellants to enter into said subscription contracts.

The testimony for certain of the appellants (ten in number), namely: Jas. T. Rhoades, Jas. T. Payne, W. *J.* Buckner, as he is named in the depositions (W. *G.* Buckner, as he is named in the bill); W. *E.* Tinder, as he is named in the depositions (W. *R.* Tinder, as he is named in the bill); *W. A.* Biscoe, as he is named in the depositions (A. W. Biscoe, as he is named in the bill); L. A. Rhoades, Mrs. M. D. Jones, Miss Emma S. Jones, R. C. Slaughter, and Miss Maude Row, is distinct and positive to the effect that the representation aforesaid with respect to obtaining money with which to do business was that a contract had been in fact secured and made with New York insurance companies to furnish as much as twenty million dollars at not over 4% per annum interest which would be available to the appellee company to carry out its plan aforesaid; that such appellants believed and relied on such representation as an existing fact; that it was a material inducement to them to enter into said subscription contracts; that but for their belief of and reliance upon such representation they would not have entered into such contracts; that such representation was in fact untrue, as appellants afterwards discovered; and that upon learning that such representation was false they at once employed counsel to bring suit; that through such counsel they

at once wrote the appellee company to the effect that they repudiated the subscription contracts and demanded payment of the moneys paid thereon, and that upon the refusal of appellee to make such repayment, this suit was promptly instituted.

The testimony for the other appellants (five in number), namely: J. H. Biscoe, J. F. Lumsden, L. M. Wood, W. *S.* Estes, as he is named in the depositions (W. *I.* Estes, as he is named in the bill) ; and B. F. Thompson, either falls short of proving or is entirely lacking in proof of the said representation being of an existing fact or that it was a material inducement to such appellants to enter into their subscription contracts, respectively. That is to say, the testimony of J. H. Biscoe falls short of stating that the representation aforesaid was one of an existing fact and also falls short of stating that it was a material inducement to him to enter into his subscription contract; the testimony of W. L. Estes is similarly deficient; the testimony of J. F. Lumsden fails in showing that the representation was of an existing fact; and there is no testimony in the cause in behalf of L. M. Wood or B. F. Thompson.

The subscription contracts aforesaid were obtained by a different corporation from that of the company aforesaid, namely, the Virginia Finance Corporation, also one of appellees; which, under its charter powers, acted as promoter of the said company in obtaining subscriptions to its stock. The Virginia Finance Corporation obtained the stock subscriptions of appellants, Mrs. M. D. Jones and Miss Emma S. Jones, through the solicitations of its agent, Williams, and the stock subscriptions of the other appellants, through its agent, Liles. These agents were paid a commission on the stock subscriptions obtained by them as compensation for their services in canvassing therefor.

The stock subscription contracts, so far as need be set forth here, were in the following form:

"Subscription to stock.

"Price $25 per share.

"The Virginia Finance Corporation having agreed with me, and others, signing contracts similar to this, to incorporate under the laws of Virginia, a banking, trust and mortgage company, with a maximum capital stock of $5,-000,000 and a minimum capital stock of $100,000, and with a charter as set out in the charter of the Virginia Finance Corporation, a copy whereof has been given me, I do hereby authorize the said Virginia Finance Corporation, as my agent, to subscribe, in my name, and I do hereby subscribe, for ....... shares of the capital stock of the said Banking, Trust and Mortgage Company of a par value of $20 per share, for which I agree to pay $..........

"I have this day drawn my check, payable to the Virginia Finance Corporation for ........ dollars, and delivered the same to its agent, and I hereby promise to pay to the trustees of the Banking, Trust and Mortgage Company, or to the Banking, Trust and Mortgage Company, $......... upon demand within thirty days after the incorporation of said company, but not before September 1, 1916, and the remainder thereof, amounting to $........, on call of the trustees, but *not* before March 1, 1917. Upon payment of same, I am to receive the certificate for said stock.

"It is understood that not more than $5.00 per share of this subscription shall be used by the Virginia Finance Corporation in defraying all expenses of every description incident to the organization of the said Banking, Trust and Mortgage Company, including attorney's fees, charter fees, franchise fees, clerical hire, rents, printing, advertising, agents' commission and complete equipment of the Banking, Trust and Mortgage Company's offices, including safes, books and fixtures complete for the transaction of business, immediately upon completion of the sale of the stock.

"This writing constitutes an agreement of the under-

signed, with the Virginia Finance Corporation, the Banking, Trust and Mortgage Company, when incorporated, and all persons signing similar agreements, and is irrevocable. All agents are positively prohibited from adding to or altering the printed terms of this contract, and no additions or alterations shall modify its terms or be recognized by either party thereto.

"Neither this contract nor the obligations herein assumed shall be transferred or assigned except the Banking, Trust and Mortgage Company.

"Witness my hand and seal this........day of..............., 1916.

------------------------------------------------------------- (Seal)

------------------------------------------------------------- Address

------------------------------------------------------------- S

------------------------------------------------------------- Occupation

-------------------------------------------------------------

Salesman."


The organization meeting of the company was held at Petersburg on September 25, 1916, pursuant to a call which gave no notice that it was for any particular purpose, merely stating on that subject that it would be a "stockholders' meeting."

There is testimony in the cause to the effect that after appellants had signed the stock subscription contracts, some of them, prior to the organization meeting, became suspicious of the good faith of those with whom they had entered into contract relations and doubtful of the success of the busines venture upon which they had entered, but they did not then know what the facts were as to said representation. They resided in a part of the State some distance from Petersburg. They secured the services of Mr. Hiden, an attorney at law, to attend the said organization meeting and ascertain what the facts were in connection with said representation and with the affairs and prospects

of the company.   Some of appellants constituted him their
proxy to vote their stock at said meeting; others of appel-
lants constituted certain persons of Petersburg their proxies
to vote their stock at such meeting, but joined in employ-
ing Mr. Hiden for the purpose aforesaid.   None of appel-
lants, however, decided to disavow or repudiate their con-
tract of subscription until after said organization meeting;
nor was Mr. Hiden as attorney at law or proxy, nor the
other proxies aforesaid, or any of them, authorized by ap-
pellants or any of them to disavow or repudiate such con-
tracts or any of them at such meeting.

The further material facts as shown by the testimony in
the case are as follows:

On September 25, 1916, Mr. Hiden, having arrived in
Petersburg, learned from an interview with counsel for
said company, prior to the organization meeting, that the
representation above mentioned, which had been made by
Williams and Liles, as aforesaid, was untrue.   Mr. Hiden
thereafter attended the organization meeting aforesaid,
filed his proxies aforesaid with the secretary of the meet-
ing, listened and attended to what was said and done, but
said nothing, made no objection to any of the proceedings
or to anything that was done, did not vote the stock he rep-
resented as proxy on any question which arose, took no
active part in the meeting, and was absent a part of the
time from the meeting.   It appears, however, that the sec-
retary treated the stock of appellants, represented by
proxy, as aforesaid, as having been voted at such meeting
on all questions which arose and in favor of the action which
was recorded as taken on such questions.

The remaining material facts which need be here noted
are that no question arose nor was any subject considered
by the organization meeting aforesaid other than matters
pertaining alone to the organization of the company,
namely, the organization of the meeting; the ascertainment

of the stockholders represented in person and by proxy (in which connection the Virginia Finance Corporation, acting under the above-quoted stock subscription contract for all the subscribers to stock of said company, including appellants, formally subscribed in their names for stock of said company), the reading of the certificate of incorporation of the company and ordering it to be spread on the minutes; the adoption of by-laws; the election of directors; the authorizing of the board of directors to assess the stock subscribed in accordance with the terms of subscription and to call for same when due; and to adopt such form of stock certificate as might be deemed advisable. Thereupon the meeting adjourned.

Upon his return home, Mr. Hiden informed appellants of all he had learned concerning the affairs of the company, including the fact that the representation aforesaid was untrue. Thus for the first time did appellants discover that such representation was untrue, and thereupon and thereafter promptly acted as above set forth.

*Hiden & Bickers,* for the appellants.

*Mann & Townsend,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

[1]  1. There is no controversy before us as to the law of the case in so far as the primary question is concerned as to what misrepresentation would entitle the appellants to the rescission of their contracts of stock subscription and the recovery back of the money paid by them thereon, if those of them who have by their proof brought themselves within the rule of law applicable thereto have not waived their rights by ratification of such contracts.

As stated in section 347 of Black on Rescission of Contracts.:

"One who is induced by fraud or material false representations as to matters of fact to subscribe for stock in a corporation may rescind his .agreement on discovery of the fraud, and may have the aid of a court of equity to make his rescission effective and either to release him from liability on his subscription or to recover back what he has paid."

To the same effect, see *Fear* v. *Bartlett,* 81 Md. 435, 32 Atl. 322, 33 L. R. A. 721; *Hurley* v. *Y. M. C. A.,* 16 Ariz. 26, 140 Pac. 816, 52 L. R. A. (N. S.) 220; *Hindman* v. *First Nat. Bank,* 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 108; 9 Cyc. 41; 20 Cyc. 44; 13 *Corpus Juris,* section 653, p. 611; 6 Va. & W. Va. Dig., pp. 466-7.

Further: It is said in *Grim* v. *Byrd,* 73 Va. (32 Gratt) 293:

"Whatever conflict of opinion may have existed in the English writers on this subject, the doctrine is believed to be well settled in the United States, that a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had the right to rely, is a ground for a rescission by a court of equity, although the party making the representation was ignorant as to whether it was true or false; and the real inquiry is not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it in entering into the contract. For in such case, whether the false representation was innocently made or knowingly made, the effect is the same upon the purchaser. In *Story's Equity Jurisprudence,* the rule is thus laid down: 'Whether the party thus misrepresenting the material fact knew it to be false or made the assertion without knowing whether it was true or false, is wholly immaterial; for the affirmation of what one does not know or believe to be true is

42

equally, in morals and in law, unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party." 1 Story Equity, par. 193, note. In *Smith* v. *Richards,* 13 Pet. 26 [10 L. Ed. 42], the Supreme Court of the United States said: 'It was immaterial to the purchaser whether the misrepresentation proceeded from fraud or mistake. The injury to him is the same, whatever may have been the motives of the seller.' See also Adams Equity, mar. p. 117, and note; 2 Parson on Contracts, 177; 1 Story on Contracts, 632, and notes of cases cited—note 3; Bispham P. of Equity, 268.

"The doctrine of these cases was substantially affirmed by this court in *Crump* v. *United States Mining Co.,* 7 Gratt. (48 Va.) 352 [56 Am. Dec. 116]. It was there decided that in written propsals of sale for stock in a mining company, if the representations contained therein are false as to any material fact, by which the purchasers have been misled to their injury, and in which they are presumed to have trusted to the vendors, the contract founded on such misrepresentations is void, whether the vendors knew the representation to be false at the time they were made or not, and whether made with fraudulent intent or not."

[2] It is also true, however, that the misrepresentation, to entitle appellants to relief, must have been one of existing fact. The general rule is that mere puffing statements or talk as to future prospects consisting of matters of opinion, will not have that effect. *Grome* v. *Economic Life Ins. Co.* (Del. Ch. 1911), 80 Atl. 809.

[3] It is further true that allegations of misrepresentation, partaking as they do of the nature of allegations of fraud, even in cases where no actual fraudulent intent exists, must be clearly proved by evidence which is unequivocal and convincing in its character.

[4]    Applying these principles to the facts of the cause before us set forth in the above statement, we are of opinion that appellants, Jas. T. Rhoades, Jas. T. Payne, W. G. or W. J. Buckner, W. E. or W. R. Tinder, W. A. or A. W. Biscoe, L. A. Rhoades, Mrs. M. D. Jones, Miss Emma S. Jones, R. C. Slaughter and Miss Maud Row, have brought themselves within the rule of law entitling them to the relief aforesaid; but that the other appellants—namely, J. H. Biscoe, J. F. Lumsden, L. M. Wood, W. L. or W. I. Estes and B. F. Thompson—have not brought themselves within such rule.

It should be said, however, in justice to appellee, the Mortgage, Trust and Banking Company, its officers, directors, counsel and stockholders, and also in justice to the appellee, the Virginia Finance Company and its officers, directors, counsel and stockholders, that, as appears from the record, none of them at any time authorized or knew until after it was made, of the misrepresentation aforesaid. The record discloses nothing reprehensible in their conduct in the premises. But, on principle and under the authorities on the subject this does not alter the effect of the misrepresentation aforesaid made by the agents, Williams and Liles, the solicitors of the stock subscriptions in question. The fact being that such subscriptions were obtained by misrepresentation, as aforesaid, the appellants, although they may show that they were unauthorized and may repudiate responsibility for the action of their said agents in making them, cannot under the circumstances aforesaid, retain the fruits of such misrepresentation.

2. The only remaining question we have to consider is whether the ten appellants above mentioned have waived their rights aforesaid by having ratified their stock subscription contracts, or must be treated as having ratified such contracts because of the action of their attorney at law and attorney in fact. J. G. Hiden, in filing proxies of

some of appellants at the organization meeting of the company, in being present during most of the time of such meeting, in allowing the stock of appellants to be voted by the secretary on the proxies filed by said Hiden as to some of it, and on other proxies to other persons as to the remainder of it, and by the failure of said Hiden to repudiate such appellants' stock subscription contracts at such meeting after he had been informed before the meeting that the representation on which such appellants rely to avoid the contracts was a misrepresentation?

We say that this is the only remaining question for our consideration because the decision of it will dispose also of any question as to the action of certain of appellants in appointing other persons proxies than Mr. Hiden and the voting of stock by such proxies amounting to a ratification of the subscription contracts of those appellants.

The question under consideration may be divided into two parts, which will be considered in their order as stated below.

[5]    (a) Did certain of appellants, by their appointment of Mr. Hiden as their proxy or by their employment of him as their attorney to attend the organization meeting of the company without giving him authority to repudiate the contracts of stock subscroption, ratify such contracts and waive the rights of such appellants to repudiate such contracts after such organization meeting was held?

This question must be answered in the negative.

As disclosed by the statement of facts preceding this opinion, while some of the appellants suspected the existence of the misrepresentation subsequently relied on as affording ground for their repudiation of the contracts in question, none of them had actual knowledge of such misrepresentation until after the organization meeting.

As said in 20 Cyc., page 93:

[6]    "The question of waiver is largely one of intent.

Hence, acts done in affirmance of a contract can amount to a waiver of fraud only when they are done with full knowledge of the fraud and of all the material facts, and with the intention clearly manifested of abiding by the contract and waiving all right to recover on the deception."

As said in 13 Corpus Juris, page 395:

"\* \* \* It is necessary that ratification be with full knowledge of the party's rights and be clearly shown."

As said by this court in *Wilson* v. *Carpenter*, 91 Va., at p. 192, 21 S. E. at p. 246 (50 Am. St. Rep. 824):

"No man can be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the ·fact that he knows his rights and intends to waive them must plainly appear. *Montague's Adm'r* v. *Hassey,* 76 Va. 307."

This principle applies where the rights of no third person intervene, and hence is applicable in the case before us to the question under consideration and is conclusive of it.

As said by this court in *White.* v. *Am. Nat. Life Ins. Co.,* 115 Va. 305, 78 S. E. 582:

"The fact that the defendant gave the president of the company a proxy to represent him in a meeting of the stockholders is also relied on as evidence of ratification of the contract. The meeting referred to was held in January, 1908, only a few days after the subscription by the.defendant to the first block of stock, and, of course, long before the fraud was discovered. In such case, giving the proxy did not operate as a waiver of his right to rescind the contract for fraud. *Va. Land Co.* v. *Haupt,* 90 Va. 533, 19 S. E. 168; 44 Am. St. Rep. 939."

And so in the instant cause. The proxies to Mr. Hiden and the employment of him as attorney to attend the organization meeting to obtain information concerning the affairs of the company, etc., was before the misrepresentation was discovered.

The following authorities are cited for appellees, namely: 10 Cyc. 425; *Wilson* v. *Hundley*, 96 Va. 96, 30 S. E. 492, 70 Am. St. Rep. 837; *Max Meadows Land & Imp. Co.* v. *Brady*, 92 Va. 71, 22 S. E. 845; *Hurt* v. *Miller*, 95 Va. 32, 27 S. E. 831; *Campbell* v. *Building Asso.*, 98 Va. 729, 37 S. E. 350; *University of Va.* v. *Snyder*, 100 Va. 567, 42 S. E. 337. But they all involve cases where the party complaining had full actual knowledge of the fraud or misrepresentation prior to the act or conduct relied on by the opposite party to evidence an election to ratify and affirm the contract.

(b) Did the aforesaid action or commission or omission of Mr. Hiden in the organization meeting aforesaid, as the attorney or as the proxy for appellants—which action consisted, in substance, in not repudiating appellants' stock subscription contract at the organization meeting after notice to him that they were obtained by misrepresentation— amount to a ratification of such contracts so as to bind appellants whom Mr. Hiden represented, and preclude them from thereafter repudiating such contracts?

This question must be answered in the negative under the facts of this case.

[7, 8] It appears from the statement of facts aforesaid, that Mr. Hiden was without authority to act for appellants in the matter of ratifying or repudiating their stock subscription contracts. Notwithstanding the existence of the misrepresentation aforesaid, upon a full knowledge on their part, they, under the well-settled law on the subject, had the right of election to affirm or repudiate their contracts. Mr. Hiden had no authority to act for them in making that election. That was not within the scope of his actual or apparent authority as proxy or as attorney. His actual and apparent authority as proxy coincided, indeed, and was confined to such matters as could and did properly come before the organization meeting for action. And as attor-

ney at law, his actual and apparent authority likewise co-incided in the case before us, as an attorney at law, as such, has no right to do any act which surrenders a substantial right of his client. 2 R. C. L., sec. 54 p. 976, sec. 63 p. 986, sec. 75 p. 995. Moreover, this being in truth a business matter, out of court, the apparent authority was not that of an attorney at law, but of an agent, which in this case was confined to his authority as proxy aforesaid. *Idem.* sec. 58, p. 989. And, as appears from the above statement of facts, the subject of the ratification or repudiation of said contracts did not come before such meeting. Further, the facts of this case do not put in operation the rule under which in some cases a principal is bound by the action of his agent within the apparent, although beyond the actual, scope of his authority. So that in any aspect, it is plain that the acts of Mr. Hiden in question were not binding upon the appellants and did not amount to a ratification of the contracts in question.

The cases of *Columbia Nat. Bank* v. *Matthews*, 85 Fed. 934, 29 C. C. A. 491; *St. John's Mfg. Co.* v. *Munger*, 106 Mich. 90, 64 N. W. 3, 58 Am. St. Rep. 468, 29 L. R. A. 63; *Eichelberger* v. *Mann*, 115 Va. 774, 776, 80 S. E. 595; *Chicago Building & Mfg. Co.* v. *Beaven*, 149 Ky. 267, 148 S. W. 37; *Harrison* v. *Heathorn*, 6 M. & S. 81; *Estates Investment Co.* v. *Ashleys*, L. R. 9 Eq. 266, cited for appellees, touching the effect of ratification of stock subscription contracts by participation in organization meetings of the company, all involve personal action of the stock subscriber, either by personal presence or by appointment of proxy after full personal actual knowledge of the alleged misrepresentation relied on as affording ground to rescind the contract. None of these authorities involve a case such as that before us.

The case of *Chaffin* v. *Cummings*, 37 Me. 77, cited for appellees, is not in point. It holds merely that taking part

in an organization meeting is some evidence that a party is a stockholder of a company.

[9] It is true that in some cases the law of agency will conclusively impute to a principal the knowledge of his agent acquired by the latter under certain circumstances; but we have been pointed to no authority which holds that such constructive knowledge will be imputed to a principal under circumstances which negative the possibility of actual knowledge on his part of the existence of a right of election to affirm or repudiate a contract because of misrepresentation, and where no agent is authorized to exercise such right of election. And upon principle, we do not think that such constructive knowledge will be imputed in such a case. The knowledge of the principal in such case must be actual to give rise to such duty of election.

For the foregoing reasons, we are of opinion to reverse the decree under review as to the ten appellants aforesaid, with costs to them, and to affirm the decree as to the other appellants.

*Reversed as to certain of appellants, and affirmed as to the other appellants.*